**MISS AMERICA PAGEANT,**
**INC., Plaintiff,**

v.

**PENTHOUSE INTERNATIONAL,**
**LTD., Defendant.**

Civ. A. No. 79–3410.

United States District Court,
D. New Jersey.

Oct. 30, 1981.

Gerald Faber, Horn, Kaplan, Goldberg & Gorny, Atlantic City, N. J., for plaintiff.

Jeffrey Daichman, Grutman, Schafrann & Miller, New York City, Stephen S. Lippman, Michael J. Ferro, Jr., P.C., Hackensack, N. J., for defendant.

## OPINION

GERRY, District Judge.

Plaintiff instituted this libel action complaining of the publication by defendant in the August 1979 issue of Penthouse Magazine of an article entitled "Miss Wyoming Saves the World ...." Plaintiff alleges that defendant falsely and with actual malice published certain false and libelous words about plaintiff's contestant, Miss Wyoming, and thus about plaintiff. Plaintiff also alleges that certain words directly of and concerning it are likewise defamatory. Plaintiff, in its complaint, identifies the aspects and specific statements in the article which it claims are "false, libelous per se or otherwise libelous."

Plaintiff is a not-for-profit corporation incorporated under the laws of New Jersey, with its principal place of business in New Jersey.

Defendant is a New York corporation with its principal place of business in a state other than in New Jersey.

Jurisdiction over this action is based upon 28 U.S.C. § 1332, diversity of citizenship.

Last December, the court decided a motion by defendant for summary judgment which was based on the ground that the article in question was a fictional work and therefore protected under the First Amendment. The court determined that the mere fact that a work could be characterized as fictional did not provide its publisher with a complete defense against an action for libel.

Defendant now moves again for summary judgment on two grounds:

(1) Plaintiff is a public figure and cannot establish actual malice by clear and convincing evidence; and

(2) The fictional story in question is a form of parody, satire, humor or opinion protected under the First Amendment.

In support of its motion, defendant offers copies of the affidavits of Robert Hofler, senior editor at Penthouse who worked on the story, and of Philip Cioffari, author of the story, which were previously submitted in support of defendant's prior motion for summary judgment. Mr. Hofler indicates that prior to the article in question, Penthouse had published four fictional works by Philip Cioffari. Because of this prior experience and because of Cioffari's reputation as a professor of English and creative writing, Mr. Hofler did not question the veracity of Cioffari's representation that the work was fictional. Moreover, Hofler was specifically assured by the author that the work was fictional.

The author, Philip Cioffari, states that he has been a free-lance writer for 15 years. In addition, he is employed as a full professor of English, teaching both creative writing and contemporary literature. The author states that he intended the story in question to be a work of fiction with no resemblance whatever to any real person or event. Nor did he intend the story to be a true statement of facts about an actual, real Miss America pageant. Cioffari verifies that he informed Hofler that his story was a work of pure fiction.

Plaintiff has filed a cross-motion for summary judgment. Plaintiff maintains that it has proved actual malice by clear and convincing evidence and thus is entitled to summary judgment on the question of actual malice. Plaintiff argues that admissions of defendant's publisher and employees establish that defendant knew that the events depicted in the article did not portray true facts about the Miss America pageant. Plaintiff also takes the position that the question of actual malice was already presented to a jury and decided adversely to defendant in a prior action in the United

States District Court for the District of Wyoming.

■ Turning first to defendant's second ground for summary judgment, defendant compares its story to satirization of the Miss America pageant in *Mad Magazine*, in the *National Lampoon* or on the Johnny Carson Show. Defendant argues that such satire, whether in the form of fiction or humor, amounts to constitutionally protected opinion and cannot be the subject of a libel action. Defendant does not explain what opinion of the Miss America pageant it seeks to present by way of its story. However, plaintiff has submitted excerpts of the transcript of the Wyoming trial. At that trial, Mr. James Goode, of defendant's staff, testified that the story had no social or political value, that it was pure entertainment. Moreover, the affidavits of Mr. Hofler and Mr. Cioffari give no indication that there was any intent to parody, satirize or present an opinion of the Miss America pageant. Whether, despite these facts, the story would have been perceived as a parody, satire or opinion is not clear from a mere examination of its contents. Moreover, the testimony of Mr. Goode and the absence of any mention of an intent to parody, satirize or opine in the affidavits of the author and editor casts substantial doubt on the question of whether the story contains any "constitutionally protected opinions." The basic premise upon which defendant's second argument is founded depends upon a finding that the work *is* opinion, satire or parody. However, such a finding cannot be made from the facts before the court.

Defendant's legal conclusion that the constitutional considerations which guarantee freedom of the press mandate that the law should be hospitable to the humor of parody are also open to question since the cases which defendant relies upon in support of its conclusion are cases from the area of copyright or trademark infringement. Certainly, different, countervailing societal interests must be balanced in such a case. A copyright or a trademark represents a property right which is balanced against the societal interest in the unimpeded flow of ideas. In a defamation action, an important personal interest in reputation is sought to be protected. That the property right in a copyright or a trademark is not equivalent to the personal interest in reputation is illustrated by *Girl Scouts of the USA v. Personality Posters Mfg. Co.*, 304 F.Supp. 1228, 1235 (S.D.N.Y.1969), relied on by defendant. In that case, the plaintiff brought an action for trademark infringement seeking a preliminary injunction against the issuance of a poster by defendant. The poster depicted a pregnant young woman, wearing a girl scout uniform with the motto "Be Prepared" on the bottom of the poster. The court held that as between an injunction and the public and societal interest in the unimpeded flow of ideas, the public interest outweighed the property right. However, the court indicated that plaintiff's remedy, to the extent that it suffered injury as a result of the publication, would be in damages for defamation, and not in injunctive relief for infringement. In the instant case, plaintiff is already seeking damages for defamation. The societal interest in the free flow of ideas has already been served since defendant has published its story. However, such an interest cannot, as the court recognized in *Girl Scouts*, be asserted to defeat a right to damages for defamation.

To accept defendant's position would amount to the granting of absolute protection to works of parody and satire. Such a position was rejected by the court in its previous denial of defendant's motion for summary judgment.

For the foregoing reasons, defendant's motion for summary judgment on the second ground must be denied.

With regard to the first ground, defendant argues that the case law requires plaintiff to prove "actual malice" by clear and convincing evidence. Defendant contends that the evidence demonstrates that it subjectively believed that the story was not about real persons or events and thus had no reason to believe that its publication would be harmful. Therefore, plaintiff will

be unable to show that defendant entertained serious doubts about the publication. Moreover, having published Mr. Cioffari's works on four previous occasions and knowing his reputation as a college professor and creative writer, defendant's reliance on the author's representations as to the fictional character of the story was justified. Finally, defendant maintains that plaintiff must prove defendant's subjective awareness of publishing a libel—i. e., of publishing with "reckless disregard for whether [the story] would be reasonably understood as relating facts and events about plaintiff which actually took place at its beauty pageant."

In *Yiamouyiannis v. Consumers Union*, 619 F.2d 932 (1980), the Second Circuit set forth the standard of proof which a plaintiff in a defamation action must meet in opposing a motion for summary judgment and described how that standard should be applied in ruling on such a motion. After determining that summary judgment procedure is not particularly to be encouraged in defamation cases and questioning the significance of the purported chilling effect, the court advocated a neutral approach: the approach set forth in Rule 56.

In *Yiamouyiannis*, the Second Circuit noted that proof of actual malice in a public figure defamation action must be with "convincing clarity." *Id.* at 940, *citing New York Times v. Sullivan*, 376 U.S. 254, 285–86, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). *Cf. Gertz v. Robert Welch*, 418 U.S. 323, 342, 94 S.Ct. 2997, 3008, 41 L.Ed.2d 789 ("clear and convincing proof [required] that defamatory falsehood be made with knowledge of its falsity or with reckless disregard for the truth"). This standard is an intermediate one between the normal civil preponderance of the evidence test and the beyond the reasonable doubt criminal standard.

■ In a case where defendant has moved for summary judgment on the issue of actual malice and the plaintiff claims that there remain material factual disputes, the court decides the materiality of the disputed facts by accepting plaintiff's version and applying the actual malice standard, subjecting plaintiff to the require-

ment of clear and convincing proof. This proof may be by circumstantial evidence of defendant's actual state of mind, either *subjective awareness* of probable falsity or actual intent to publish falsely. In denying a defendant's summary judgment motion, the court must conclude that, based upon the evidence asserted in plaintiff's affidavits or other proofs, "a reasonable jury *could find* malice with convincing clarity." *Nader v. de Toledano*, 408 A.2d 31, 49 (D.C.Ct.App. 1979) (emphasis in original). The question to be resolved at summary judgment is whether plaintiff's proof is sufficient and not whether the court is convinced of the existence of actual malice.

Defendant insists that "only evidence inescapably demonstrating that Penthouse subjectively entertained serious pre-publication doubts about the story, or in fact knew it was factual rather than fiction, meets the strict evidentiary standard imposed by the Constitution on public figures," *citing St. Amant v. Thompson*, 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968). The authority relied on by defendant fails to support such a broad exposition of the actual malice standard. *St. Amant* does not deal with the question of a publisher's liability for defamation in a work of fiction. Nor does it establish a requirement of knowledge that a work is factual. *St. Amant* does require a "high degree of awareness of probable falsity," which awareness would seem to be relevant regardless of whether plaintiff is defamed in a fictional work as opposed to a pure news item. Where there is no proof, direct or circumstantial, of actual knowledge of falsity, *St. Amant* holds that plaintiff may nevertheless satisfy the actual malice standard by showing that the defendant entertained serious doubts as to the truth of his publication. Publishing with such doubts indicates a reckless disregard for truth or falsity.

Under the New York Times test, a public figure plaintiff must show actual malice—knowledge of falsity or reckless disregard for the truth or falsity of the publication. While such a test is easily applied to news items intended to convey truthful informa-

tion, it is less clear how the Supreme Court would evaluate a work not intended to be truthful. It would seem too simplistic in the case of a fictional or satirical work simply to question whether the author/publisher had the subjective intent to publish a *falsity*, since such works are not intended to convey truth. In this regard, *Bindrim v. Mitchell*, 92 Cal.App.3d 61, 155 Cal.Rptr. 29, *cert. denied*, 444 U.S. 984, 100 S.Ct. 490, 62 L.Ed.2d 412 (1979), is instructive.

In that case, the author of the novel, "Touching," had attended "nude therapy" sessions conducted by plaintiff, a psychiatrist. At the time she registered for the sessions, the author signed a release indicating that she would not write anything about her experience. Thereafter, plaintiff wrote a novel about her experience in which plaintiff's name was changed. The author represented to the publisher that the work was fictional, and that the characters were incapable of being identified as real persons.

The court found that the author's depiction of the therapy sessions was false— the fictional doctor used obscenities in dealing with the patients. Moreover, one of the fictional patients described bizarre sexual fantasies during the sessions. Plaintiff presented tape recordings of the sessions which the author attended and at none of these sessions did any of the patients describe such imaginings. Since the author had attended sessions herself, she was *in a position to know* the truth or falsity of her story.

The court in *Bindrim*, on a motion to set aside a verdict of liability, sought to determine whether there was clear and convincing evidence to support the jury's finding that defendant Mitchell, the author, had entertained actual malice. The court found reckless disregard on the part of the author apparent from her knowledge of the truth of what transpired at the encounter sessions and her literary portrayal of that encounter. Parenthetically, the court noted the fact that "Touching" was a novel did not necessarily insulate the author from liability for libel, if all the elements of libel were otherwise present. Since the actual malice test concentrates on the defendant's attitude toward the truth or falsity of the material published and there was evidence that plaintiff had attended the sessions, the court concluded that the jury was entitled to find that her publication was in reckless disregard of the truth or with actual knowledge of falsity. With regard to the publisher of the novel, the court indicated that it could not be held liable for defamation in the publication of the hardback edition because at the time of the publication the author had assured it that the work was entirely fictional, and it had no reason to disbelieve the author. However, at the time of publishing the paperback edition, defendant publisher had received correspondence from Dr. Bindrim's attorney in which he claimed that his client was the fictional doctor. Despite its doubts as to the purely fictional character of the work, the publisher issued a paperback edition. Thus, as to the publication of the paperback, there was clear and convincing evidence to support the jury's finding of liability.

In the instant case, the court must decide whether there is sufficient evidence from which a jury could find actual malice with convincing clarity. Defendant has submitted the affidavits of Mr. Hofler and Mr. Cioffari, indicating that defendant was informed by the author that the work was purely fictional. In support of its position that there is sufficient evidence of actual malice, plaintiff has submitted excerpts from the trial transcript in the action of *Pring v. Penthouse, International*, in the District Court of Wyoming, which alleged defamation of a former Miss Wyoming by virtue of the same article in question herein. Plaintiff has also submitted a certified copy of the responses of the Wyoming jury to special interrogatories on the question of liability.

Viewing the evidence in the light most favorable to plaintiff, the record reveals that: employees of defendant testified in the Wyoming action as to their activities in connection with the publication of the arti-

cle. Robert Hofler, senior editor in charge of the article, testified that he wrote the subtitle "But She Blew the Contest with Her Talent," that he approved the art work, including the drawing of a female with a Wyoming banner, and that he chose the "blow-up" quote. Hofler admitted that he did not know of a Miss America contest in which a contestant appeared partially naked. Moreover, Hofler agreed that the Miss America pageant is proper, but indicated that because of the propriety, the article was obviously humor and obviously fiction. When he first reviewed the article, Hofler said he had qualms about it because the subject was the Miss America pageant and because that subject had been overdone satirically. Hofler describes the article as a story about a contestant in the Miss America pageant. Hofler sent the article to an attorney in the legal department for review. After reading it, the attorney inquired as to whether the article was fiction.

Robert Guccione, publisher of Penthouse, testified that the article "is about a contestant in the Miss America contest." Guccione acknowledged that the article contained many incidents of reality—the contest itself, the titles of the contestants (Miss Wyoming, etc.), Laramie, Wyoming, the boardwalk, the judges and the audience. Despite the incidents of reality, Guccione testified that he viewed the article as pure fantasy. However, Guccione did not read the article prior to publication.

James Goode, editorial director, described the article as a humorous piece, a piece of short fiction, about a contestant in the Miss America pageant. Goode admits that there is a reality in such a contest since there is a boardwalk in Atlantic City, there are judges at the contest, and there are other contestants. Moreover, he knew that the writing was about a Miss America pageant, he knew it was about a pageant held in Atlantic City, and he knew that the real Miss America pageant was held there. However, he took the story to be a total invention from the moment he began reading it, and he found nothing in it to indicate that it was not a total piece of fiction.

Based upon this testimony, plaintiff contends that there is sufficient evidence of defendant's knowledge of the falsity of the article to withstand defendant's motion and to warrant judgment for plaintiff on the question of actual malice.

Defendant counters that the testimony of its employees and publisher does not establish that defendant was aware that it was publishing false facts about plaintiff, but rather, simply that defendant was publishing a work of satirical fiction not purporting to relate real events. Defendant argues that, if plaintiff's logic were to be accepted, "every person whoever publishes a piece of fiction acts with actual malice," imposing a rule of strict liability for writers of fiction. However, such a rule of law must, in defendant's view, be rejected. Defendant relies on *Guglielmi v. Spelling-Goldberg Productions*, 25 Cal.3d 860, 160 Cal.Rptr. 352, 603 P.2d 454 (Cal.1979), in which Chief Justice Bird of the California Supreme Court observed in concurrence:

They [truthful and fictional accounts] have equal constitutional status and each is as likely to fulfill the objectives underlying the constitutional guarantees of free expression. Moreover, in defamation cases, the concern is with defamatory lies masquerading as truth. In contrast, the author *who denotes* his work as fiction proclaims his literary license and indifference to 'the facts.' There is no pretense. All fiction, by definition, eschews an obligation to be faithful to historical truth. Every fiction writer knows that his creation is in some sense false.

160 Cal.Rptr. at 359, 603 P.2d at 461 (emphasis added).

The *Guglielmi* decision, while of interest, is irrelevant to the questions before this court. In *Guglielmi*, the author had clearly *denoted* his work as fiction. In the instant case, defendant has offered the affidavits of Mr. Cioffari and Mr. Hofler stating their perception of the work as fiction. However, defendant did not in its magazine expressly denote the piece of fiction, though it had characterized the article as "Humor" in the magazine's table of contents and had

not identified other articles otherwise as "fictional." Moreover, the work in *Guglielmi* did not involve any real persons such as plaintiff herein or Ms. Pring in the Wyoming action. Finally, the California court does not establish that the writer of fiction may use the names of real persons without any liability to them.

While I understand defendant's concern over a rule of law which would render every work of fiction false within the meaning of *New York Times* and every author of fiction liable for defamation, I do not believe that is the position urged by plaintiff. Plaintiff contends that the court herein should evaluate the record consistent with the approach in *Bindrim*. Since *Bindrim* is the only decision in which a court applies the clear and convincing proof of actual malice requirement to a work of fiction, it is the only bench mark for this court.

In ruling on defendant's motion for summary judgment, the court must determine whether material facts are in dispute, accept plaintiff's version of the facts (and the most favorable inferences of fact) which are material, and apply the actual malice test to the facts, subjecting plaintiff to the requirement of showing that a jury could rationally find clear and convincing proof of actual malice. The facts before the court are the alleged defamatory publication attached to plaintiff's complaint, selected portions of the trial transcripts in *Pring v. Penthouse*, and the affidavits of Messrs. Hofler and Cioffari. As I indicated earlier, the affidavits contrasted with the publication raise a fact question as to the fictional character of the article. However, under *Bindrim*, such a distinction between fiction and reality is not material to a resolution of the question of whether the actual malice test is satisfied. Plaintiff's opposition to defendant's motion relies on the testimony of defendant's employees in the Wyoming action. Defendant does not take issue with any of the testimony in the record, but has merely supplemented it so that statements of defendant's employees are not taken out of context.

In *Bindrim*, the court found actual malice in defendants' implicit knowledge of the truth (for the author—as a result of attending the sessions, and on the part of the publisher as a result of receiving the letter from Bindrim's attorney and subsequent publication which did not truthfully represent the doctor's conduct or the events at a session). In the instant case, the defendant's employees admitted that the subject of the story was the Miss America pageant (Hofler at pg. 398, Goode at pg. 599–602). Mr. Hofler, senior editor in charge of the article, testified that he was unaware of any events like those in the story ever transpiring at a Miss America contest. Mr. Goode, editorial director, admitted that the article was about a Miss America pageant in Atlantic City, and that the real pageant was in Atlantic City.

Based upon this evidence, the court must determine whether a jury could find actual malice by clear and convincing proof. Actual malice involves an inquiry into defendant's actual state of mind prior to publication. However, defendant's actual state of mind may be established circumstantially either by its *subjective* awareness of probable falsity or its actual intent to publish falsely.

The testimony relied on by plaintiff does indicate some degree of awareness on the part of defendant's employees of the presence of the Miss America pageant as an element in the article. Hofler and Goode were apparently aware that the Miss America pageant was a real event, and that the story described had not occurred at a real Miss America pageant. However, it is not clear, nor does plaintiff explain, how this awareness demonstrates a subjective awareness of publishing a falsity. Defendant has submitted affidavits indicating that the author assured defendant's employees that the story was purely fictional. Knowing that a real Miss America pageant exists would not have caused defendant to question the fictional character of the story since defendant knew that no events like those described had ever occurred at a pageant. Moreover, in the story, the conduct

of the protagonist is not attributed to the plaintiff. In addition, the reaction of the judges (presumably *plaintiff's* judges) to the protagonist—"downright horrified," the elimination of Charlene from the finalists, and the remark of her manager that the contest is "not a beauty contest anymore, . . . [but] a scholarship pageant," are consistent with the image plaintiff claims to have. Thus, the story itself would not have alerted defendant to the fact that it was publishing a falsity about plaintiff. Therefore, the only possible negative and false portrayal of plaintiff which defendant could have gleaned from the story arises by innuendo. Specifically, the immoral antics of the protagonist and the fight among the contestants can allegedly be attributed to plaintiff, since it permitted such individuals to participate in its pageant. Such an attribution is strained, at best, since it directly conflicts with the straightforward portrayal of plaintiff in the article. Plaintiff, through its judges, is horrified by Charlene. Moreover, plaintiff, unlike the doctor in "Touching," is not an active participant in the events described. In *Bindrim*, the doctor was described as directing the therapy sessions. Consequently, things which transpired during the sessions were partially attributable to him. In contrast, plaintiff is not a participant in the activities in defendant's story and, in contrast to Dr. Bindrim, is a mere backdrop. Therefore, the conduct of Charlene or the fighting contestants cannot be described as attributable to plaintiff or reflecting upon the character of plaintiff.

Thus there is some evidence of an awareness of a possibility of a false statement about plaintiff. However, the question is whether the evidence amounts to proof from which a jury could find actual malice clearly and convincingly.

In light of the unrebutted evidence of the defendant's perception of the work as a piece of fiction, of testimony offered by plaintiff from the Wyoming trial which indicates that defendant's employees saw nothing in the story which would cause them to question the fictional character of the story, of defendant's reliance upon Mr. Cioffari's representations, and of the story

itself which makes no direct, false statements about the plaintiff, the evidence of actual malice is insufficient to meet the clear and convincing test of *Yiamouyiannis*. While the court can speculate that there are few individuals at this time who have not observed the Miss America pageant, and that defendant's employees should have known that a contestant had never performed in a manner such as that described in defendant's publications, such speculations do not provide a basis for inferring that defendant published the story with actual malice toward this plaintiff. The only statement which gives any basis to the inference that defendant entertained serious doubts about the publication is Mr. Hofler's that he was unaware of any contestant who had appeared half naked in a contest. However, the mere portrayal in the story of a half naked contestant does not render the portrayal a statement about plaintiff. While the court could conclude from Mr. Hofler's statement that such an awareness should have created a question in his mind as to whether, despite its fictional character, the story contained any false statements about the plaintiff, the court does not perceive the statement as clear and convincing proof from which a jury could find actual knowledge of falsity. Comparing plaintiff's proofs to those in *Bindrim*, there is no evidence from which the court can infer that defendant was in a position to know the truth, e. g., by having attended a pageant or by receiving a letter from plaintiff prior to publication. While such evidence might have easily been procured in depositions of defendant's employees, it is not before the court and has not been obtained by plaintiff in the two years since suit was instituted.

Plaintiff's failure to come forward with sufficient proof of actual malice is not rescued by the jury finding of actual malice in the Wyoming action. An examination of the special interrogatories to the jury in *Pring v. Penthouse* reveals that the jury was called upon to determine whether defendant published false statements about plaintiff Pring. Thus a jury finding of

actual malice vis-a-vis Pring is not a finding of actual malice vis-a-vis the Miss America Pageant. Moreover, as defendant correctly points out, "the issue decided in the prior litigation must be identical with the issue presented in the action in question" in order for the prior judgment to estop defendant from denying actual malice herein. *Scooper-Dooper, Inc. v. Kraftco Corp.*, 494 F.2d 840, 844 (3d Cir. 1974). Since the question raised by plaintiff's complaint and defendant's motion was never in issue in Wyoming, there is no collateral estoppel effect by virtue of the Wyoming judgment.

Since the court concludes that plaintiff has failed to come forward with evidence from which a jury could find actual malice by clear and convincing proof vis-a-vis the defendant publisher, the court must grant defendant's motion for summary judgment. *Yiamouyiannis v. Consumers Union of the U. S.*, 619 F.2d 932 (2d Cir. 1980). The court will enter the attached order.