Dolly M. PARTIN *v.* Bob MEYER et al

82-46                                                          639 S.W.2d 342

Supreme Court of Arkansas
Opinion delivered September 27, 1982

*Sexton & Porter, P.A.*, by: *J. Lamar Porter*, for appellant.

*Laser, Sharp & Huckabay, P.A.*, for appellees.

GEORGE ROSE SMITH, Justice. Mrs. Partin brought this action for false imprisonment and slander as a result of having been detained and accused of theft while she was registering for an overnight room at the Ozark Inn in Clarksville. The defendants are the owners and the manager of the motel. The jury awarded Mrs. Partin $1,000 compensatory damages and $2,000 punitive damages. She apparently considers the awards inadequate and seeks a new trial on the ground that the trial court gave two erroneous instructions. The case comes to us as a tort action. Rule 29 (1) (o).

The appellant first complains about the court's submission of an issue of probable cause to the jury. In explaining the issues the court first defined false imprisonment and then continued with this paragraph:

> As a defense to this claim of Plaintiff, Dolly Partin, for false imprisonment, it is contended by the defendants that John Hancock [the motel manager] had probable cause for detaining the Plaintiff, Dolly Partin.

A party who asserts the defense of probable cause has the burden of proving this defense.

The plaintiff objected below, and argues here, that there is no common-law right for one private citizen to detain another and that even if such right exists there is no substantial evidence to support a finding of probable cause for detention in this case.

There is a conflict in the parties' versions of just what happened that night. Mrs. Partin, a resident of Alabama, testified that she was driving through Arkansas on her way to California. When she entered the motel about midnight, without a reservation, she tapped the bell at the desk, but no one appeared. She stepped behind the desk and looked into the adjoining room, but no one was there. As she was about to leave she saw a small sign indicating that the manager was in Room 201. When she knocked on that door, Hancock asked her to wait a minute while he dressed. He emerged shortly and accompanied her to the lobby. He unlocked a side door to get to the lobby. Mrs. Partin remarked that the lobby door was open and she had gone into the lobby.

Mrs. Partin signed a registration card and tendered a traveler's check in payment. When Hancock opened the cash drawer to make change he discovered that the day's receipts (about $600) were missing. According to Mrs. Partin, Hancock told her to stand still and said he was going to have to lock her up. He called the police and told them that she had robbed the motel. Hancock then locked the door.

Two police officers arrived within four or five minutes after receiving the call. They testified that Hancock accused Mrs. Partin of the theft and insisted that her purse and her car be searched. Mrs. Partin willingly consented to the searches and satisfied the police of her complete innocence.

Hancock testified that he and his wife were temporarily in Room 201, because the air conditioning in the lobby and their adjoining quarters was not working. He said that the cash drawer at the front desk was kept locked, with the key hanging behind a card on the wall. He denied having

accused Mrs. Partin of the theft. His version was that when he discovered that the money was missing, "I told her that since she had been in the office and in the living quarters that she would need to wait and talk to the police, and I turned and called the police." He admitted having locked the door, but he didn't think he asked the officers to search Mrs. Partin. As we have indicated, the officers corroborated Mrs. Partin's version of what happened after their arrival.

We do not agree with the argument that there is no common-law right in one person to detain another. To the contrary, we have said that our statute authorizing a private person to make an arrest upon reasonable grounds for believing that the arrested person has committed a felony "is in affirmance of the common law." *Carr* v. *State*, 43 Ark. 99 (1884), construing Ark. Stat. Ann. § 43-404 (Repl. 1977). By definition an arrest includes a restraint of the person arrested or his submission to restraint; so the authority merely to detain is logically included within the authority to arrest, if that distinction matters.

The requirement of probable cause for a citizen's arrest arises from an accommodation between two opposing principles. "The law of arrest represents the compromise between two conflicting interests of the highest order — the interest in personal liberty and the interest in apprehension of criminals. It represents one of the most successful efforts of the common law to accommodate itself both to the needs of society and of its individual members." Harper and James, Torts, § 3.18 (1956).

Probable cause means that the arresting person must "reasonably suspect" the other person of having committed a felony. "It is enough that the circumstances which the actor knows or reasonably believes to exist are such as to create a reasonable belief that there is a likelihood that the other has committed the felony. In such cases, the public interest in the punishment of a felon requires the other's arrest for the purpose of securing his custody pending investigation." Restatement of the Law, Torts (2d), § 119, Comment *j* (1965).

We cannot say that the trial judge should have declared as a matter of law that Hancock had no probable cause for detaining Mrs. Partin. Hancock knew that a theft had occurred and that Mrs. Partin had been alone in that part of the lobby where the cash was kept. He had to make a quick decision whether or not to detain for a few minutes a transient who had had the opportunity to commit the crime. Probable cause, as we have seen, entails a "reasonable" suspicion and a "reasonable" belief. That standard of conduct, like that of the "reasonably" careful person, presents an issue for the jury unless "there is utterly no rational basis in the situation, testimonially, circumstantially, or inferentially, for a jury to believe otherwise." *Spink* v. *Mourton*, 235 Ark. 919, 362 S.W.2d 665 (1962). However unlikely it may now seem that Mrs. Partin would have registered at the motel after having committed a theft, we think it was for the jury to say whether probable cause for the detention was shown. (Of course the jury actually rejected the defense of probable cause, since the verdict was for the plaintiff, but we do not imply that the error would have therefore been harmless if there had been no testimony justifying the submission of the defense.)

In the other questioned instruction the court told the jury:

> You are instructed that falsely accusing one of a crime constituted what the law calls slander per se. In such cases, a person slandered is entitled to compensatory damages as a matter of law and such plaintiff is not required to introduce evidence of actual damages in order to recover compensatory damages.

As tendered by the plaintiff, the last clause in the paragraph read, "in order to recover substantial damages." It is argued that the trial judge should not have modified the instruction by substituting the word "compensatory" for "substantial."

The modification was proper. We have twice said in opinions that when words are actionable *per se*, the plaintiff need not prove actual damages in order to recover "substantial" damages. *Dunaway* v. *Troutt*, 232 Ark. 615, 339

S.W.2d 613 (1960); *Taylor* v. *Gumpert,* 96 Ark. 354, 131 S.W. 968 (1910). There we were using the word "substantial" to mean something more than nominal damages. The award, however, must always be compensatory; so the trial court correctly preferred that term in instructing the jury.

Affirmed.