## John RANSOPHER *v.* Norman CHAPMAN

90-59                                                     791 S.W.2d 686

Supreme Court of Arkansas
Opinion delivered June 18, 1990

*Guy Jones, Jr.*, for appellant.

*Stripling & Morgan*, by: *Dan Stripling*, for appellee.

DAVID NEWBERN, Justice. This is a defamation case. We have no public figure plaintiff, no "media" defendant, and no matter of "public concern," thus we will be able, for the most part, to avoid the First Amendment quagmire exemplified in *New York Times* v. *Sullivan*, 376 U.S. 254 (1964); *Gertz* v. *Robert*

*Welch, Inc.*, 418 U.S. 323 (1974); and *Dun & Bradstreet, Inc.* v. *Greenmoss Builders, Inc.*, 472 U.S. 749 (1985). John Ransopher, a building contractor, presented evidence that Norman Chapman, a person for whom Ransopher was constructing a residence, called Ransopher a liar and a cheat. The statement was made while speaking to two sales clerks, and possibly in the presence of customers, in a lumber company display area where Ransopher did business. Chapman was there trying to ascertain whether Ransopher had paid his bill to the lumber company for materials used in constructing Chapman's house. The court would not permit Ransopher to present evidence of a general loss of business and his personal loss of confidence in the process of selling his services. A verdict was directed in favor of Chapman because Ransopher was unable to present evidence of losses suffered in his business tied directly to the statement of Chapman. We reverse and remand because the evidence would support a finding of slander *per se*, thus the words used would permit a recovery absent such proof. It is not necessary to rule on the evidence exclusion question.

## 1. *Slander* per se

■ Ransopher's brief is hardly a *tour de force* in the Arkansas law of libel, citing only one case, but perhaps that is because the task was already done in Comment, *The Law of Defamation: An Arkansas Primer*, 42 Ark. L. Rev. 915 (1989), which Ransopher cites for the proposition that slander *per se* includes "accusations injurious to the plaintiff in his or her trade." The cases cited in the article support the contention with respect to "*per se* defamation." *Luster* v. *Retail Credit Co.*, 575 F.2d 609 (8th Cir. 1978); *Lloyd* v. *Gerber Products Co.*, 260 F. Supp. 735 (W.D. Ark. 1966); *Waters-Pierce Oil Co.* v. *Bridwell*, 103 Ark. 345, 147 S.W. 64 (1912). The two federal cases, decided on Arkansas law, involved libel actions, but the *Waters-Pierce Oil Co.* case dealt with slander, and we know of no Arkansas case which has ignored the distinction between defamation *per se* and *per quod* other than *Little Rock Newspapers, Inc.* v. *Dodrill*, 281 Ark. 25, 660 S.W.2d 933 (1983), where the distinction did not matter. That was a case involving the *Gertz* decision with respect to a media defendant. Absent the enhanced First Amendment

considerations attending cases of "public concern" or media defendants, both libel *per se* and slander *per se* permit substantial or compensatory damages without proof of actual loss.

The case cited by Ransopher's brief is *Partin* v. *Meyer*, 277 Ark. 54, 639 S.W.2d 342 (1982), where we upheld an instruction stating that accusing one of a crime is slander *per se* so the plaintiff was not required to introduce evidence of actual damages to recover compensatory damages. Chapman correctly points out that the holding of the case was that it was not improper for the court to refer to "compensatory" as opposed to "substantial" damages.

While Chapman is correct about the narrow holding of the *Partin* case, it is nonetheless one in which we approved an instruction supporting an action for slander *per se*, and it supports Ransopher's point that the action does not require proof of actual losses. Chapman argues further, however, that Ransopher has not recognized changes in defamation law brought about by the Supreme Court decisions in the cases mentioned at the outset of this opinion. Chapman cites our case of *Hogue* v. *Ameron, Inc.*, 286 Ark. 481, 695 S.W.2d 373 (1985), where we wrote that the *Gertz* decision left open the question whether the libel *per se* concept remained in the law with respect to actions against non-media defendants. He contends Ransopher's brief must fail because he has not given us an argument as to why words should be held actionable *per se* in a case like the one before us now.

We cannot agree with Chapman's contention. Ransopher has argued that if the words are actionable *per se* no evidence of damages in the form of actual losses is required. That is a correct argument. When we stated in the *Hogue* case that the question remained open, we did not mean to imply that the law of defamation had been completely overturned by the *Gertz* decision. Rather, we meant that the *Gertz* decision had not foreclosed the law of defamation *per se* in cases between private, non media parties, although it might be expanded at some point. It has not been so expanded. Neither the *Gertz* case nor the *Dun & Bradstreet* case, where the emphasis was on issues of "public concern," nor any other controlling case of which we have been made aware has altered the law respecting cases like the one before us now.

We know our opinion in the *Dodrill* case used the past tense to refer to defamation *per se*, and the author of the law review comment cited above seems to regard it as an anachronism. *See also* H. Brill, *Arkansas Law of Damages*, §31-7 (Supp. 1988). While we may entertain an argument in the future that the awarding of compensatory damages without proof of loss should not occur, this case, where the briefs are sketchy at best and the point is not even argued, is hardly the one to consider that proposition.

### 2. Damages evidence

Ransopher contends the court erred in sustaining an objection to his attempt to testify about a general loss of business which befell him after the alleged slander occurred. In a proceeding in the judge's chambers, Ransopher proffered testimony that he had fewer contracts and that his confidence in his ability to sell his services had diminished. Chapman contends we should ignore this point because Ransopher did abstract his objection. Ransopher's abstract does contain Chapman's relevancy objection and statement to the trial court that Ransopher should not be allowed to testify to a loss of business which cannot be tied to Chapman's allegedly slanderous statement. In addition, the abstract displays the argument which took place before the trial court on the point. We regard that as sufficient.

We have examined the record and learned that after the in-chambers proceedings Ransopher testified without further objection that he had had four building contracts in 1988 but only one in 1989. It seems to us that the point became largely moot. The only item, of those in controversy, that Ransopher failed to get before the jury was his testimony that he had lost his self confidence as a result of the alleged slander.

We decline to rule on the point. The trial court may see the evidence entirely differently upon retrial in view of our ruling on the slander *per se* issue. The relevancy of evidence is a decision left to the trial court's discretion. *See* A.R.E. 401; *Simpson* v. *Hurt*, 294 Ark. 41, 740 S.W.2d 618 (1987). The evidence may be presented differently, and the court may choose to exercise his discretion differently with respect to the evidence which the

sustained objection would have excluded.

### 3. *Appellants' abstract*

Chapman has pointed out deficiencies in Ransopher's abstract, and has declined to supplement it. *See* Rules of the Arkansas Supreme Court and Court of Appeals 9(e). It is true, as Chapman points out, that Ransopher did not, for example, abstract motions for directed verdict. We are, however, able to tell from the abstract of the court's letter opinion the content of Ransopher's directed verdict motion on the matter of slander *per se* and the damages proof requirements. We do not find the abstracting deficiencies sufficient to warrant dismissal of the appeal.

Reversed and remanded.