Jo DODSON *v.* David DICKER

812 S.W.2d 97

Supreme Court of Arkansas
Opinion delivered June 24, 1991

*Mashburn & Taylor*, by: *W.H. Taylor* and *Lindlee Baker*, for appellant.

*Harry McDermott*, for appellee.

STEELE HAYS, Justice. This is a defamation and invasion of

privacy action arising from a letter written by the appellant, Ms. Jo Dodson, on October 18, 1988, to the State Board of Therapy Technology, with copies sent to the Governor, Attorney General, a reporter and several others.

Ms. Dodson's letter focused on the actions of the president of the State Board of Therapy Technology, Marinetta Dicker, and also included references to her husband, appellee David Dicker.[1] The letter asserted, among other things, that David Dicker assisted Marinetta Dicker in rewriting the test for licensing of therapy technicians, which may have been done for profit; the Dickers drafted the budget for the board without the approval of other board members; the Dickers drew up a proposed license law for presentation to the Arkansas legislature without the approval of the board; and, David Dicker has imposed himself as the sixth member of the board. Dodson also stated that, in her opinion, the board had slandered a fellow therapist, Steve Schechter, and David Dicker's letter to the Rolf Institute was a good example of it; and she wrote "he [Dicker] has such a 'hate' for Steve, and to be fair, Steve does not have any great love for him either, and in fact neither do I. I hate a bully . . . especially a sneaky bully, which is what he appears to be in my opinion."

David Dicker filed suit against Ms. Jo Dodson in Washington County Circuit Court. After a jury trial on June 7, 1990, a verdict was returned in favor of Dicker and he was awarded $7,000 in actual damages and $5,000 in punitive damages.

Dicker offered two alternative theories to the jury, namely, invasion of privacy and libel, specifically, libel per se. Both causes of action may be joined in the same suit, nevertheless, there can be only one recovery for any particular publication. *Dodrill* v. *Arkansas Democrat Co.*, 265 Ark. 628, 590 S.W.2d 840 (1979). Ms. Dodson insists that her directed verdict motion should have been granted on both the invasion of privacy and libel theories and we agree.

---

[1] There were other issues raised in Ms. Dodson's letter that did not concern the appellee, David Dicker, however, the letter in its entirety is too long to reprint for this opinion.

## I.

### *The Libel Claim*

■ First, we consider Dicker's libel action. In doing so we note that in cases raising First Amendment issues the United States Supreme Court has repeatedly held that an appellate court "has an obligation to 'make an independent examination of the whole record' in order to make sure that 'the judgment does not constitute a forbidden intrusion on the field of free expression.' " *Bose Corp.* v. *Consumers Union of U.S., Inc.*, 466 U.S. 485, 499 (1984) (quoting *New York Times Co.* v. *Sullivan*, 376 U.S., at 284-286.) *See also NAACP* v. *Claiborne Hardware Co.*, 458 U.S. 886, 933-934 (1982); *Greenbelt Cooperative Publishing Assn.* v. *Bresler*, 398 U.S. 6, 11 (1970); *St. Amant* v. *Thompson*, 390 U.S. 727, 732-733 (1968). We have exercised independent judgment on this issue and conclude that a finding of libel would constitute a forbidden intrusion on free expression because the words involved are not capable of sustaining a defamatory meaning.

■■ In *Milkovich* v. *Lorain Journal Co.*, __ U.S. __, 110 S.Ct. 2695 (1990), the Supreme Court established that the threshold question in defamation actions is not whether a statement could be considered an "opinion" but rather whether a reasonable factfinder could conclude that the statement implies an assertion of an objective verifiable act. *Id.* at 2707; *See generally*, Note, *Freedom of Speech - No Separate "Opinion" Privilege in Defamation Actions*, 13 U.A.L.R. L.J. 517 (1991). The holding in *Milkovich* was recently applied in *Unelko Corp.* v. *Rooney*, 912 F.2d 1049 (9th Cir. 1990). In order to determine whether a statement could be viewed as implying an assertion of fact, the Ninth Circuit set forth three factors to be weighed: (1) whether the author used figurative or hyperbolic language that would negate the impression that s(he) was seriously maintaining implied fact; (2) whether the general tenor of the publication negates this impression; and (3) whether the published assertion is susceptible of being proved true or false. *Id.* at 1053. We think the Ninth Circuit's method of analysis is a reasonable extension of the *Milkovich* doctrine, therefore, our examination of Dodson's statements follow the *Rooney* considerations. As this court enters an area of defamation law where we have not previously

ventured, we caution that every set of circumstances subsequently considered under this analysis must be examined on a case-by-case basis.

▪ In this case it is not necessary to discuss Dodson's statements under each category because evidence supporting the second category—the tenor, or general drift of thought of Dodson's letter—completely negates any impression that Dodson's statements were presented as an assertion of objective facts about David Dicker. This letter was about Dodson's protestation of the actions of a state board and her views on what she perceived to be Mr. Dicker's interference with its operations. It is most significant that the board's own policy required that all requests and concerns addressed to it by therapists be submitted in writing. That is precisely what Dodson was doing. Her letter was expressed in terms of her "opinion" and "protest." It criticized not only Dicker, but also his wife who was president of the state board and the state board itself. In fact, her letter opens with the following statement, "I do hereby formally and strongly protest the actions of the President of the State Board of Therapy Technology, Marinetta Dicker." Dodson, as a massage therapist, had a substantial interest in the conduct of the State Board of Therapy Technology and her freedom to engage in uninhibited debate over its actions is both legitimate and desirable.[2] The fact that she referred to David Dicker with intemperate language does not convince us that the statements, in their totality, were the type of assertions of objective facts about Mr. Dicker that give rise to liability in a defamation action. Dodson's statements do not meet the threshold requirement for a defamation action thus, the trial court erred in denying a directed verdict on the libel theory.

## II.

### The Invasion of Privacy Claim

Next, we consider the denial of Ms. Dodson's motion for a directed verdict on the issue of invasion of privacy.[3] Dodson

---

[2] It is noteworthy that Ms. Dodson was subsequently appointed to the board by the Governor, nominated for board president by Marinetta Dicker and elected to that position by board members.

[3] Because we dispose of the invasion of privacy/false light claim under this analysis

argued that David Dicker did not present sufficient proof of malice to produce a submissible issue for the jury.

■ This court applies certain standards when reviewing the denial of a directed verdict. A motion for directed verdict should only be granted if the evidence is so insubstantial as to require a jury verdict to be set aside. *Bice* v. *Hartford Acc. & Indem. Co.*, 300 Ark. 122, 777 S.W.2d 213 (1989). In determining the propriety of the trial court's action concerning a motion for directed verdict, the evidence is given its highest probative value and viewed in a light most favorable to the party against whom the verdict is sought. *Id.*

■ The right to recover for an invasion of privacy requires the plaintiff to demonstrate:

> (1) the false light in which he was placed by the publicity would be highly offensive to a reasonable person, and (2) that the defendant had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the plaintiff would be placed. RESTATEMENT (SECOND) OF TORTS, § 652 E. (1977).

*Dodrill* v. *Arkansas Democrat Co.*, 265 Ark. 628, 590 S.W.2d 840 (1979).

■ In *Dodrill* we made it clear that, where the plaintiff is not a public figure and the publication is of matters of general or public concern the plaintiff must prove actual malice by clear and convincing evidence. The question, then, presented under this section is whether Mr. Dicker prevailed on his burden of establishing actual malice as part of his prima facie case of invasion of privacy.

■ Statements made with actual malice are those made with knowledge that the statements were false or with reckless disregard of whether they were false or not. *New York Times Co.* v. *Sullivan* 376 U.S. 254, 279-280 (1964). The constitutional definition of malice is concerned with showing the author's

---

we need not decide whether the actual malice standard, which is carried over from defamation actions, could be examined under the *Milkovich/Rooney* balancing test.

subjective disregard for accuracy of his statements. The Supreme Court emphasized the subjective nature of the inquiry when it commented that the actual-malice determination in the case before it "rests entirely on an evaluation of [the author's] state of mind when he wrote his initial report, or when he checked the article against that report." *Bose, supra* at 494. *See also* R. Smolla, *Law of Defamation* § 3.13 - 3.15 (1991). And in *St. Amant* v. *Thompson*, 390 U.S. 727, 731 (1968) the United States Supreme Court stated:

> [R]eckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication. Publishing with such doubts shows reckless disregard for truth or falsity and demonstrates actual malice.

Additionally, we have recognized that a failure to investigate does not in itself establish the bad faith inherent in malice. *Gallman* v. *Carnes*, 254 Ark. 987, 497 S.W.2d 47 (1973).

With these principles in mind, we cannot say that David Dicker proved actual malice with clear and convincing evidence. There was no evidence that Dodson entertained actual doubts as to the accuracy of her statements. Even though Dodson was unable to back up her allegations with proof, the majority of her comments were not completely without basis. Dodson testified, and Marinetta Dicker substantiated her testimony, that Mrs. Dicker had said publicly that she was rewriting the test for therapy technicians. The board's secretary and treasurer testified that several therapists and massage therapy school owners thought that David and Marinetta Dicker wrote the test. Gordon Bradford, a licensed massage therapist testified that Mr. Dicker's comments indicated that Dicker and his wife planned to formulate a new law to submit to the legislature. Ms. Dodson explained that her comment about the budget was based on Marinetta Dicker's comment at a board meeting where she said, "we have drawn up the budget and it has been approved." The appellee makes much of Dodson's statement, that in her opinion Steve Schechter had been slandered by board members and Mr.

Dicker's letter to the Rolf Institute was a good example, because a letter was actually written by the Rolf Institute. However, Dodson admitted that was an error and testified that it was actually a telephone call that David Dicker made to the Rolf Institute.

The statements made in Dodson's letter, we believe, reflect the inevitable inaccuracies that accompany debates on controversial issues innate in the public arena, and especially in a governmental board such as the one in this case. A subjective inquiry into Dodson's state of mind when she wrote the letter reveals that she was motivated by dissatisfaction with the board's operations. While it is conceded that our "society has a pervasive and strong interest in preventing and redressing attacks upon reputation" that interest must be weighed against protecting our First Amendment's "vital guarantee" of free and open discussion of public issues. *Milkovich* at 2707. In this case, our First Amendment guarantee of free speech necessarily prevails.

Reversed and dismissed.

CORBIN, J., concurs.