Nellie MITCHELL, Plaintiff,

v.

GLOBE INTERNATIONAL
PUBLISHING, INC. d/b/a
"Sun", Defendant.

Civ. No. 91–3001.

United States District Court,
W.D. Arkansas,
Harrison Division.

Sept. 4, 1991.

Phillip H. McMath, McMath Law Firm, Little Rock, Ark., Roy E. Danuser, Mountain Home, Ark., for plaintiff.

Philip S. Anderson, Williams & Anderson, Little Rock, Ark., for defendant.

MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

The October 2, 1990, edition of the *Sun* published a photograph of the plaintiff in conjunction with a "story" entitled, "World's oldest newspaper carrier, 101, quits because she's pregnant!" The "story" purports to be about a "papergal Audrey Wiles" in Stirling, Australia, who has been delivering papers for 94 years. Read-

**1236**

ers are told that the papergal became pregnant by a man she met on her newspaper route.

The plaintiff, Nellie Mitchell, is a 96–year–old resident of Mountain Home, Arkansas. Ms. Mitchell has operated a newsstand since 1963. Prior to that she delivered newspapers on her paper route. The defendant, Globe International Publishing, Inc., publishes the *Sun.* The defendant also publishes the *Examiner.* In 1980 the *Examiner* ran an article entitled "Granny's a paperboy at age 85." The article was about Ms. Mitchell. The picture of Ms. Mitchell appeared with this article as well.

Based on the *Sun* article, the plaintiff filed this action for defamation on November 30, 1990, in the Circuit Court of Baxter County, Arkansas. The action was removed to this court on January 7, 1991, on the basis of diversity of citizenship.

Globe contends it is entitled to judgment as a matter of law because the article and photograph in question did not convey false and defamatory statements about the plaintiff. It is further contended that summary judgment is appropriate because there is no proof of actual malice. Plaintiff, naturally, strenuously opposes the motion.

■ Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided on purely legal grounds. *Holloway v. Lockhart,* 813 F.2d 874 (8th Cir. 1987); Fed.R.Civ.P. 56. The Supreme Court has issued the following guidelines for trial courts to determine whether this standard has been satisfied.

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial—whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). *See also Agristor Leasing v. Farrow,* 826 F.2d 732 (8th Cir.1987); *Niagara of Wisconsin Paper Corp. v. Paper Industry Union–Management Pension Fund,* 800 F.2d 742, 746 (8th Cir.1986).

■ The Eighth Circuit Court of Appeals has advised trial courts that summary judgments should be cautiously invoked so that no person will be improperly deprived of a trial of disputed factual issues. *Inland Oil & Transport Co. v. United States,* 600 F.2d 725 (8th Cir.1979), *cert. denied,* 444 U.S. 991, 100 S.Ct. 522, 62 L.Ed.2d 420 (1979). The Court has recently reviewed the burdens of the respective parties in connection with a summary judgment motion. In *Counts v. MK–Ferguson Co.,* 862 F.2d 1338 (8th Cir.1988), the court stated:

> [T]he burden on the party moving for summary judgment is only to demonstrate, *i.e.,* '[to] point[ ] out to the District Court,' that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.

*Id.* at 1339, *quoting, City of Mt. Pleasant v. Associated Elec. Coop.,* 838 F.2d 268, 273–74 (8th Cir.1988) (citations omitted) (brackets in original).

■ However, the Court of Appeals for this circuit has also held that the court, in ruling on the motion for summary judgment, must give the non-moving party "the benefit of the reasonable inferences that can be drawn from the underlying facts." *Fischer v. NWA, Inc.,* 883 F.2d 594, 598 (8th Cir.1989) (*citing Trnka v. Elanco Products,* 709 F.2d 1223 (8th Cir.1983).

The law of defamation has undergone a radical change as a result of the Supreme Court's opinion in *New York Times v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), and its progeny. De-

termination of the appropriate standard of fault is, or may be, dependent on the status of the plaintiff, the status of the defendant, and the subject matter of the defamatory material. The court will not attempt to present an overview of the constitutional fault doctrines. *See generally* Lisa R. Pruitt, *The Law of Defamation: An Arkansas Primer,* 42 Ark.L.Rev. 915 (1989). Rather, we will begin by determining the appropriate standard to be used when a private plaintiff is involved.

The standard of fault to be applied in cases involving a private plaintiff and a media defendant was left to the states so long as liability without fault was not imposed. *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 347, 94 S.Ct. 2997, 3010, 41 L.Ed.2d 789 (1974). Subsequently, in *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.,* 472 U.S. 749, 105 S.Ct. 2939, 86 L.Ed.2d 593 (1985), the court rejected the media/non-media distinction referred to in *Gertz.* Instead, the court focused on the content of the defamatory statements indicating there was a reduced constitutional value to speech on matters of purely private concern. *Id.* at 761, 105 S.Ct. at 2946. The court concluded "that permitting recovery of presumed and punitive damages in defamation cases absent a showing of 'actual malice' does not violate the First Amendment when the defamatory statements do not involve matters of public concern." *Id.* at 763, 105 S.Ct. at 2947.

The Arkansas Supreme Court has stated that in a suit by a private individual against a media defendant the standard of care is that of ordinary negligence, not actual malice as the defendant contends. *Little Rock Newspapers, Inc. v. Dodrill,* 281 Ark. 25, 660 S.W.2d 933 (1983) (*Dodrill II*); *KARK–TV v. Simon,* 280 Ark. 228, 232, 656 S.W.2d 702, 704 (1983); *Dodrill v. Arkansas Democrat Co.,* 265 Ark. 628, 632, 590 S.W.2d 840, 844 (1979), *cert. denied,* 444 U.S. 1076, 100 S.Ct. 1024, 62 L.Ed.2d 759 (1980). The actual malice standard would be applicable to a claim for punitive damages.

In *Little Rock Newspapers, Inc. v. Dodrill,* 281 Ark. 25, 660 S.W.2d 933 (1983)

(*Dodrill II*), the court stated that no presumed damages were available in cases against media defendants. In light of the holding in *Dun & Bradstreet,* the court's holding in *Dodrill II* that damages to reputation may not be presumed is open to revision, at least in cases involving statements made by a private plaintiff that do not involve matters of public concern. *See* Lisa R. Pruitt, *The Law of Defamation: An Arkansas Primer,* 42 Ark.L.Rev. 915, 980–982 (1989).

Defendant argues that the Arkansas Supreme Court has refused to follow *Dun & Bradstreet* in subsequent cases. Defendant cites *Hogue v. Ameron Inc.,* 286 Ark. 481, 695 S.W.2d 373 (1985) and *Ransopher v. Chapman,* 302 Ark. 480, 791 S.W.2d 686 (1990). *Hogue,* however, contains no discussion of the public concern test and does not even cite *Dun & Bradstreet.* The *Hogue* court merely noted it was an open question whether the concept of libel *per se* still existed in cases involving non-media defendants. Defendant infers from this that the court intended to adhere to *Dodrill II* with regard to media defendants. However, it is not apparent from the reported decision that the court was even aware of the *Dun & Bradstreet* decision.

█ The *Ransopher* case is more closely on point. In *Ransopher* the court noted that "[a]bsent the enhanced First Amendment considerations attending cases of 'public concern' or media defendants, both libel *per se* and slander *per se* permit substantial or compensatory damages without proof of actual loss." *Ransopher,* 302 Ark. at 481–82, 791 S.W.2d 686. The court went on to note that "we may entertain an argument in the future that the awarding of compensatory damages without proof of loss should not occur . . . ." *Id.* at 483, 791 S.W.2d 686. From this it does appear that the Arkansas Supreme Court would not allow an award of presumed damages in a case involving a media defendant. Thus, plaintiff must establish actual damage to her reputation. The showing of actual damage to reputation required by other Arkansas cases has been slight. *Partin v. Meyer,* 277 Ark. 54, 639 S.W.2d 342 (1982).

*See also Hogue v. Ameron, Inc.*, 286 Ark. 481, 695 S.W.2d 373 (1985) (slight evidence of damage sufficient to get to jury).

■ A cause of action for defamation generally has six elements: (1) the defamatory nature of the statement of fact; (2) the statement's identification of or reference to the plaintiff; (3) publication of the statement by the defendant; (4) the defendant's fault in the publication; (5) the statement's falsity; and (6) the damages suffered by the plaintiff. Lisa R. Pruitt, *The Law of Defamation: An Arkansas Primer*, 42 Ark.L.Rev. 915, 920 (1989). *See also* H. Brill, *Arkansas Law of Damages* § 35–8 (2d Ed.1990). The defendant argues the article in question was satire, humor, or fiction and was not meant to be a truthful statement of facts. As such, defendant urges that a different standard is appropriate for works of those genres. Specifically, defendant states a different standard has been developed for determining malice in these situations, namely: whether the author intended, or recklessly failed to anticipate that readers would construe the publication as a statement of defamatory facts. Defendant relies on *Miss America Pageant, Inc. v. Penthouse International, Ltd.*, 524 F.Supp. 1280, 1286–87 (D.N.J.1981). We have previously determined, however, that actual malice is not the appropriate standard of fault to be applied to the issue of liability.

By affidavit the author of the article indicates the subject article is entirely fictional. In his deposition the author indicates he was given the headline and the picture and then "made up" the story. John Vader, editor of the *Sun*, indicates in his deposition that when the picture of plaintiff was selected they assumed she was dead.

Vader describes the *Sun* as follows: a "tabloid that is published mainly for entertainment. It deals with offbeat, fantastic, very unusual stories." Deposition 8–9. "[T]he *Sun* publishes stories which border on fantastic. The *Sun*'s stories are not necessarily true." Vader Deposition at 27. "The *Sun* is a magazine. A great many of the articles in the *Sun*, as I said before, are fantasy, fantastic, very much like science fiction. There are a sprinkling of actual happenings in the articles about actual happenings in the paper; those are very, very well updated." Vader Deposition at 38.

The typical defamation action involves a purportedly factual publication. Actions involving fictional works are atypical. In an action arising from a purportedly nonfactual publication concentration on the "falsity" of the allegations is problematic. Courts have taken different analytical approaches to this issue.

One law review article describes the problems inherent in such analysis as follows:

> The application of the *New York Times* or *Gertz* analysis to fiction is problematic, however, not because of the truth contained in fiction but because of the very "falsity" of the fiction. In a work of fiction, the author's misrepresentations are more than the result of carelessness or negligence regarding the truth of the material; they are a deliberate disregard of the truth. Thus, all defendants in fiction cases have acted with "actual malice" according to the nonfiction definition of this term in *New York Times*. As a result, the literal application to fiction of the constitutional test of fault established in *New York Times* and refined in *Gertz* would bring about unintended and perverse results.

R. Rich & L. Brilliant, *Defamation–in–Fiction: The Limited Viability of Alternative Causes of Action*, 52 Brooklyn L.Rev. 1, 6 (1986). It is recommended that in such situations a plaintiff should be required to prove the following four elements: (1) that the alleged tortious statement was false; (2) that the defendant's motivation for the portrayal was to cause injury to the plaintiff; (3) that the portrayal is "of and concerning" the plaintiff as a matter of identity; and (4) that such portrayal could be reasonably understood as describing actual qualities of the plaintiff or actual events in which plaintiff participated. *Id.* at 2. The second element of this test would, of course, need to be modified in cases involving private plaintiffs

when no issue of public concern is involved. In such cases, the inquiry is whether the defendant negligently published a falsehood.

The defendant urges the court to adopt a different standard because the article is completely fabricated and could not be taken as true. As pure fiction or fantasy the defendant argues the article is not reasonably susceptible to a defamatory meaning. The court cannot say this article is clearly fiction. Nor do we believe the court should act as a literary critic and determine to what genre a particular publication belongs. However, the particular style of the writing involved is part of the context to be examined in evaluating the alleged defamatory statements. We do believe the main focus of the inquiry should be modified somewhat. The court believes a workable solution was proposed by the court in *Pring v. Penthouse International, Ltd.*, 695 F.2d 438 (10th Cir.1982), *cert. denied*, 462 U.S. 1132, 103 S.Ct. 3112, 77 L.Ed.2d 1367 (1983).

*Pring* was a defamation case concerning an article which appeared in *Penthouse*. The subject of the article involved the Miss America contest and a Miss Wyoming contestant. The defendant argued the story was a "spoof of the contest, ridicule, an attempt to be humorous, 'black humor,' a complete fantasy which could not be taken literally." *Pring*, 695 F.2d at 439.

The court noted:

> The test is not whether the story is or is not characterized as 'fiction,' 'humor,' or anything else in the publication, but whether the charged portions in context could be reasonably understood as describing actual facts about the plaintiff or actual events in which she participated. If it could not be so understood, the charged portions could not be taken literally.

*Pring*, 695 F.2d at 442. *See also Unelko Corp. v. Rooney*, 912 F.2d 1049, 1054 (9th Cir.1990), *cert. denied*, — U.S. ——, 111 S.Ct. 1586, 113 L.Ed.2d 650 (1991) (Rooney's Broadcast on "60 Minutes" receives no protection based on the overall tenor— could reasonably be viewed as implying an assertion of objective fact); *Dodson v. Dicker*, 306 Ark. 108, 812 S.W.2d 97 (1991).

The basic question to be resolved was stated in two parts—"whether the publication was about the plaintiff, that is, whether it was of and concerning her as a matter of identity; and secondly, whether the story must reasonably be understood as describing actual facts or events about plaintiff or actual conduct of the plaintiff." *Pring*, 695 F.2d at 439.

The material at issue "must convey to a reasonable reader the impression that they describe actual *facts* about the plaintiff or activities in which she participated to be actionable. When one cannot reasonably interpret the material as portraying actual facts about the plaintiff, no damage to reputation can result." *Dworkin v. Hustler Magazine, Inc.*, 668 F.Supp. 1408, 1415 (C.D.Cal.1987) *aff'd*, 867 F.2d 1188 (9th Cir. 1989).

The *Pring* court relying on *Greenbelt Pub. Assn. v. Bresler*, 398 U.S. 6, 90 S.Ct. 1537, 26 L.Ed.2d 6 (1969) concluded that the "reasonably understood" element was a question of law. *Pring*, 695 F.2d at 442. While there may be circumstances under which the court could rule on the issue as a matter of law, we do not believe that the issue is always a question of law. Nor do we believe that *Greenbelt* compels such a result. *Greenbelt* involved newspaper reports of public meetings. The reports accurately and truthfully stated that some people at the public meetings characterized Bresler's negotiating position as "blackmail." *Greenbelt*, 398 U.S. at 12, 90 S.Ct. at 1541. In light of the fact that the article was accurate, truthful, and conveyed the full context of the discussions taking place at the meeting, the court concluded as a matter of law that "[n]o reader could have thought that either the speakers at the meetings or the newspaper articles reporting their words were charging Bresler with the commission of a criminal offense." *Id.* at 14, 90 S.Ct. at 1542. *See also Dworkin v. Hustler Magazine, Inc.*, 668 F.Supp. 1408, 1415 (C.D.Cal.1987) (It is for the court to decide this issue in the first instance as a matter of law).

**1240**

In some circumstances the context in which the statements are made and the incidents related may compel the conclusion that the story could not be taken literally. In other circumstances the material complained of may be susceptible to defamatory meaning. In the terms used in *Pring* the alleged defamatory material could reasonably be understood to convey actual facts about the plaintiff or actual events in which she participated. Under the circumstances present herein, it is the province of the trier of fact to determine whether the material could be so understood.

 The article in question bore the plaintiff's picture.[1] Therefore, the central issue is whether the article could be reasonably understood to describe actual facts about the plaintiff. Defendant referring to the *Guinness Book of World Records* informs the court that "everyone is well aware that it is physically impossible for a 101 or 96-year-old woman to be pregnant." Additionally, we are told that the deposition testimony of the plaintiff and Vada Sheid support a finding that no one could understand the article to set forth true facts.

The court cannot say as a matter of law that the article is incapable of being interpreted as portraying actual events or facts regarding the plaintiff. The "facts" conveyed are not so inherently impossible or fantastic that they could not be understood to convey actual facts. Nor can we say that no person could take them seriously. Moreover, even if the headline and certain facts contained in the article could not be reasonably believed other facts *e.g.,* the implication of sexual promiscuity, could reasonably be believed.

In making this determination we "consider the surrounding circumstances in which the statements were made, the medium by which they were published and the audience for which they were intended." *Dworkin,* 668 F.Supp. at 1416. The articles are written in a purportedly factual manner. No distinction is made between those articles that are wholly fictional and the articles that are intended to be factual. Fictional articles are not denoted as such. The *Sun* apparently intends for the readers to determine which articles are fact and which are fiction or what percentage of a given article is fact or fiction.

The layout, captions, and style of writing contained in the article is similar in format to news articles. There are no cautionary statements appearing in this article or to the court's knowledge in the entire edition of the *Sun.*

For these reasons, the motion for summary judgment will be denied. A separate order in accordance herewith will be concurrently entered.

---

**1.** Plaintiff has not asserted an invasion of privacy claim for appropriation of her likeness. *See*

*generally* H. Brill, *Arkansas Law of Damages* § 35–9 (2d Ed.1990).