Patricia BLAND *v.* Dr. Joe VERSER

89-63                                   774 S.W.2d 124

Supreme Court of Arkansas
Opinion delivered July 10, 1989

*Bill W. Bristow, P.A.*, and *Lohnes Tiner*, for appellant.

*Barrett, Wheatley, Smith & Deacon*, by: *J.C. Deacon* and *Lucinda McDaniel*, for appellee.

TOM GLAZE, Justice. This appeal involves a defamation action filed by the appellant, Patricia Bland, against appellee, Dr. Joe Verser. Bland served as head teller for the Bank of Harrisburg (the Bank), and Dr. Verser is the Secretary of the Arkansas State Medical Board (Medical Board). The Medical Board maintained its checking account in the Bank, and the Board's employee, Vickie Deatherage, apparently converted to her own use a large sum of money belonging to the Board by cashing at the Bank a number of checks made payable to the Medical Board. In reporting this matter at a meeting of his Board, Dr. Verser made the following statement:

"But I have told them, and I'm telling you, the head teller in the Bank of Harrisburg has to be the dumbest, most stupid, ignorant person; *or second, there is a collusion.*" (Emphasis added.)

Bland later brought this suit against Dr. Verser, alleging Verser had defamed her by imputing she was guilty of criminal misconduct. Dr. Verser answered and moved for summary judgment stating his statements (1) were opinion absolutely protected by the first amendment, (2) were privileged and thus not actionable and (3) were made by a state employee immune from civil liability. The trial court held Dr. Verser's statements did not constitute actionable slander and granted summary judgment. We reverse and remand.

■■ It is well settled, of course, that summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories, and affidavits show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. ARCP Rule 56. Contrary to the trial court's ruling, our review of the record and applicable law reflects a fact issue does exist as to the issue of whether Dr. Verser's remarks constituted actionable slander. In *Dean v. Black & White Stores, Inc.*, 186 Ark. 667, 55 S.W.2d 500 (1932), the court held that where the words, together with the attendant circumstances, are alleged to charge a crime, they are actionable, and whether the words charged, together with the attendant circumstances in the case, amounted to the charge of crime was a question of fact for the jury. *See also Luster v. Retail Credit Co.*, 575 F.2d 609 (8th Cir. 1978). While Dr. Verser argues otherwise, we believe it is readily apparent that a fair and reasonable inference can be made from his statements that Bland was guilty of a criminal act. At the very least, we believe a jury question exists as to this factual issue.

■■ In holding as we do, we considered Dr. Verser's argument that his statements were opinions absolutely protected under the first amendment. *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974); *Janklow v. Newsweek, Inc.*, 788 F.2d 1300 (8th Cir. 1986). In arguing that his remarks were opinions rather than facts, Verser relies largely upon the four-part test set out in *Janklow*. Those four factors, no one of which the *Janklow* court

believed is dispositive when distinguishing fact from opinion, are (1) the precision and specificity of the statements; (2) verifiability of the statement; (3) the literary context in which the statement was made, including tone and use of cautionary language, as well as the type of forum involved; and (4) the public context in which the statement was made, including whether the statement concerned a public or private figure. When considering Dr. Verser's remarks in light of the foregoing factors, we have no difficulty in concluding they are factual and fall outside the realm of fair comment.

■ The record reflects that the Medical Board's employee embezzled its funds and the remarks attributed to Verser clearly reflect Verser believed Bland contributed to the crime either through her collusion or her ignorance and stupidity. In sum, Verser's statements were in no way vague and reflected that Bland had committed a crime or was derelict in her professional duties. In determining the verifiability of Verser's remarks as they may reflect Bland's participation in any embezzlement scheme, we would place ourselves in a difficult posture, indeed, if we were to conclude that a person could be accused of criminal misconduct but alleviate the accuser of any consequences in making such a charge by saying his charge was unverifiable. Here, a private individual was involved in what became a public matter. Dr. Verser seeks some justification for his remarks by relying on a statement made by a deputy sheriff that Deatherage might have colluded with some bank employee and that the sheriff's office would continue its investigation. Of course, the short answer to this argument is that a defendant, in asserting the defense of fair comment, may not escape liability by attributing to others the ideas to which he gives expression. *See Cepeda* v. *Cowles Magazine & Broadcasting, Inc.*, 328 F.2d 869 (9th Cir. 1964); *see also* 50 Am. Jur. 2d *Libel and Slander* § 289 (1970).

■ Additionally, Dr. Verser points to the public forum in which his comments were made, and argues he was required to report to the Medical Board and to speak freely concerning the conversion of funds and as to any possible collusion involved. This argument also goes to Dr. Verser's separate contention that his remarks to the Board were privileged. *See Navarro-Monzo* v. *Hughes*, 297 Ark. 444, 763 S.W.2d 635 (1989); *Ikani* v. *Bennett*, 284 Ark. 409, 682 S.W.2d 747 (1985). Dr. Verser's own

statements to the Medical Board undermine his public forum and privilege arguments since he not only reported the matter to the Board, but also he repeated his asserted defamatory remarks to certain Bank officials. Any privilege Dr. Verser may have enjoyed before the Medical Board is of no importance since he shared those remarks to others outside the Board's forum.

■■ Finally, Dr. Verser seeks immunity from civil liability for his remarks and asserts his statements were not made with malice, thus he was immune from liability under Ark. Code Ann. § 19-10-305 (1987). Section 19-10-305 does not protect state employees if they act maliciously. *Beaulieu* v. *Gray*, 288 Ark. 395, 705 S.W.2d 880 (1986). Nor does § 19-10-305 protect an employee for his or her acts or omissions occurring outside the person's course and scope of employment. Under Arkansas law, statements made with actual malice include not only those made with spite, hatred, or vindictiveness, but also those made with such reckless disregard of the rights of another as to constitute the equivalent of ill will. *Dun & Bradstreet, Inc.* v. *Robinson*, 233 Ark. 168, 345 S.W.2d 34 (1961); *see also Cunningham* v. *Skaggs Companies, Inc.*, 729 F.2d 1156 (8th Cir. 1984).

■ Since this appeal comes to us from a summary judgment, the movant, Dr. Verser, had the burden to show there is no existence of a fact issue, and if there is any doubt whatever that such an issue exists, the summary judgment should be denied. *See Trace X Chemical* v. *Highland Resources*, 265 Ark. 468, 579 S.W.2d 89 (1979). From our review of the record, we are compelled to conclude that the circumstances surrounding Dr. Verser's remarks present at least a jury question as to whether they infer malice.

For the reasons above, we reverse and remand.