Richard WAYMIRE *v.* Jay DEHAVEN

92-1436                                    858 S.W.2d 69

Supreme Court of Arkansas
Opinion delivered July 5, 1993

*Wallace & Hamner*, by: *James R. Wallace* and *Michael A. LeBoef*, for appellant.

*Barber, McCaskill, Amsler, Jones & Hale, P.A.*, by: *R. Kenny McCullough*, for appellee.

DAVID NEWBERN, Justice. This is a defamation case. Richard Waymire, the appellant, entered an agreement to purchase property from The Maumelle Company of which the appellee, Jay DeHaven, is part owner and operator. Mr. Waymire apparently was to trade a recreational vehicle as part of the purchase price. Mr. Waymire and Mr. DeHaven got into a dispute in the course of the transaction, resulting in Mr. Waymire filing a complaint against Mr. DeHaven with the Arkansas Real Estate Commission.

Mr. DeHaven learned that *Arkansas Business* magazine was to publish an article about him and his company, and he called representatives of the magazine and their lawyer to meet with him and his lawyer. During the meeting Mr. DeHaven was asked about the Waymire transaction and complaint. He responded with the remarks which formed the basis of Mr. Waymire's slander claim.

The article which was the subject of the discussion at the meeting was published in *Arkansas Business*. It quoted words spoken by Mr. DeHaven at the meeting. After a description of events surrounding the real estate transaction and Waymire's complaint to the Arkansas Real Estate Commission, the following appeared:

But Jay DeHaven of The Maumelle Co. blasts back at Richard Waymire. DeHaven claims Waymire was trying to scam him for $15,000.00, that being part of the purchase price, by holding the title of the recreational vehicle for weeks and using other ploys.

"Waymire is an absolute con," DeHaven says. "He's an absolute crook."

The Trial Court found that the statements Mr. DeHaven made about Mr. Waymire did not constitute slander *per se*. As Mr. Waymire, who is employed as a salesman of new and used cars, made no showing that he could produce evidence of special damages, the Trial Court held there was nothing for a jury to decide, and summary judgment was entered in favor of Mr. DeHaven.

■ The initial determination whether words spoken or published are capable of constituting defamation *per se* rests in the Court. The opinion in *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242 (1946), discusses in detail the role of a court in defamation proceedings, and W. Prosser and W.P. Keeton, *Prosser and Keeton on Torts*, § 111 (5th ed. 1984), at p. 781, states:

It is for the court in the first instance to determine whether the words are reasonably capable of a particular interpretation, or whether they are necessarily so; it is then for the jury to say whether they were in fact so understood.

If the words in question *could not* constitute slander *per se* we would affirm, but we must reverse and remand as the words used by Mr. DeHaven about Mr. Waymire could have been construed as actionable without a showing of special damages because of being prejudicial to a person of a profession or trade. Such words are actionable without a showing of special damages.

■ In *Reese* v. *Haywood*, 235 Ark. 442, 360 S.W.2d 488 (1962), in the process of determining that the words in question in that case were not actionable *per se*, we wrote:

In an early case we discussed the distinction between words that are actionable in themselves and those that are not: "Where the natural consequence of the words is a

damage, as if they import a charge of having been guilty of a crime, or of having a contagious distemper, or if they are prejudicial to a person in office, or to a person of a profession or trade, they are in themselves actionable; in other cases, the party who brings an action for words, must show the damage which was received from them." *Studdard* v. *Trucks*, 31 Ark. 726.

We recently applied the distinction between words actionable *per se* and those which are not in *Ransopher* v. *Chapman*, 302 Ark. 480, 791 S.W.2d 686 (1990), where we reversed a directed verdict because the evidence was capable of supporting determination of slander *per se*. We held that in such a case "no evidence of damages in the form of actual losses is required."

The argument advanced by Mr. DeHaven and adopted by the Trial Court was that the words in question here did not allege that Mr. Waymire was guilty of a crime and were not made about or in direct reference to his business; therefore, they could not constitute defamation *per se*, and absent a showing of special damages, they were not actionable.

### 1. Allegation of crime

We look to circumstances surrounding the challenged statements to determine whether they are capable of an actionable meaning. In *Bland* v. *Verser*, 299 Ark. 490, 774 S.W.2d 124 (1989), the Arkansas State Medical Board, which had an account at the Bank of Harrisburg, had apparently lost money from the account due to conversion by a Board employee. Dr. Verser, the chairman of the Board, allegedly told a group of persons, "But I have told them, and I'm telling you, the head teller in the Bank of Harrisburg has to be the dumbest most stupid, ignorant person; or second, there is a collusion." Ms. Bland, the person referred to, alleged Dr. Verser had defamed her by imputing she was guilty of criminal misconduct. He moved for summary judgment. The Trial Court held Dr. Verser's statements did not constitute actionable slander and granted summary judgment. We reversed and remanded as the use of the term "collusion," in those circumstances was enough to imply Ms. Bland was guilty of theft from the Bank.

Recognizing that words imputing a crime are capable of

constituting defamation *per se*, the Trial Court in this case looked to cases from other jurisdictions which analyzed the term "crook" to conclude that it was a word of general disparagement rather than a direct allegation of specific criminal conduct and it was not slander *per se*. *See Cinquanta* v. *Burdett*, 388 P.2d 779 (Col. 1963); *Friedlander* v. *Rapley*, 38 App. D.C. 208 (C.A.D.C. 1912); *Klein* v. *McGauley*, 29 A.D.2d 418, 288 N.Y.S.2d 751 (1968); *Nelson* v. *Rosenberg*, 280 N.W. 229 (Neb. 1938); *Vacca* v. *General Elec. Credit Corp.*, 88 A.D.2d 740, 451 N.Y.S.2d 869 (1982). *Cf., Albertini* v. *Schaefer*, 97 Cal. App. 3d 822, 159 Cal.Rptr. 98 (Ct. App. 1979).

We agree that the language used, including the words, "crook," "con," and "scam," did not, in context, allege any criminal misconduct on the part of Mr. Waymire.

## 2. Prejudice in business or trade

Restatement 2d, Torts, § 573, makes the following statement in Comment c.: "It is not necessary that the defamer refer to the other engaged in the particular profession or calling in question. It is enough that a statement is of a character to be particularly disparaging of one engaged in such occupation." Use of "crook," "con," and "scam," uttered in conjunction with an allegation that Mr. Waymire was using "ploys," including holding title to a recreational vehicle in order to obtain $15,000 from DeHaven, presented a jury question whether Mr. Waymire had been disparaged in his business or profession. Webster's Ninth New Collegiate Dictionary (1986), at p. 1046, defines "scam" as a fraudulent or deceptive act or operation; "con," at p. 271, as a swindle and "crook," at p. 308, as a person who engages in fraudulent or criminal practices.

This is a close case, but on balance we must hold that the easily ascertainable meanings of the terms used, when applied to a car salesman in the context of describing a trade of a recreational vehicle for real estate, are capable of impugning Mr. Waymire's business reputation and are thereby capable of being defamatory.

That, of course, does not end the matter. Our conclusion is only that summary judgment was improper because Mr. DeHaven was not, in the words of Rule 56(c), entitled to it as a matter of

law. Presumably upon remand the case will proceed to trial, and a jury will determine whether Mr. DeHaven's statement was prejudicial to Mr. Waymire in his business, trade, or profession.

Reversed and remanded.

GLAZE, J., concurs.

BROWN, J., not participating.