Donald EWING *v.* CARGILL, INC.

95-389                                                          919 S.W.2d 507

Supreme Court of Arkansas
Opinion delivered April 22, 1996

*Benny M. Tucker, Michael S. Ewing,* and *Charles A. Yeargan,* for appellant.

*Smith, Stroud, McClerkin, Dunn & Nutter,* by: *W. David Carter,* for appellee.

ROBERT H. DUDLEY, Justice. Appellant Donald Ewing filed this defamation suit against Cargill, Inc., and, upon trial, the jury found that Ewing was not defamed. The trial court entered a judgment accordingly, and Ewing appeals. We affirm the judgment.

The facts leading to the alleged defamation are as follows. Donald Ewing and his brother, Dr. Douglass Ewing, entered the poultry business in 1979, as the operators of Ewing Farms, a partnership, and Ewing Enterprises, Inc. They purchased feed grain from Cargill, Inc. In 1980 and 1981, the Ewing brothers failed to pay Cargill for the feed. Cargill, Inc., subsequently filed suit against "Douglass Ewing, Donald Ewing, and Ewing Enterprises, Inc." Donald Ewing filed a counterclaim. The parties reached an agreement by which Cargill would take a judgment against Dr. Douglass Ewing, but would dismiss its suit against Donald Ewing and Ewing Enterprises, Inc., and Donald Ewing would dismiss his counterclaim against Cargill. On April 14, 1981, Cargill took a judgment against Dr. Douglass Ewing for a little over $63,000. However, the judgment did not mention Cargill's claim against Donald Ewing or Ewing Enterprises, Inc., and it said nothing about Donald Ewing's counterclaim against Cargill. It was not until June 15, 1988, or seven years later, that these claims were actually dismissed. The judgment against Dr. Douglass Ewing was not satisfied. Cargill's attorneys wanted the judgment to survive as long as possible.

On February 2, 1989, Cargill sued out a *scire facias* to revive the judgment. *See* Ark. Code Ann. §§ 16-65-501 — 505 (1987). A *scire facias* is in the nature of a summons. *Alexander* v. *Steel*, 13 Ark. 392 (1853). The style of the *scire facias* is "Cargill, Inc. v. Douglass E. Ewing, et al.," but the body incorrectly states that the judgment to be revived was "against Douglass E. Ewing, Donald Ewing and Ewing Enterprises, Inc." The crux of this defamation suit is that the foregoing erroneous statement constituted defamation of Donald Ewing. Other parties were brought in, including Cargill's attorneys, but they were dismissed prior to trial.

Donald Ewing's first assignment is that the trial court erred in refusing to instruct the jury that Cargill committed defamation *per se*. Appellant Ewing cites no case by this court holding that a statement that a judgment exists against a plaintiff, without more, constitutes defamation *per se*, and we are not aware of any such case. The statement that Cargill had a judgment against Ewing, without more, did not amount to words that "on their face

and without the aid of extrinsic proof are recognized as injurious." *See Dun & Bradstreet, Inc.* v. *Robinson,* 233 Ark. 168, 178-179, 345 S.W.2d 34, 40 (1961).

One writer has explained libel *per se* at early common law as follows:

> Libel, on the other hand, was divided into the per se and per quod categories on bases different than those used for slander. When defamatory meaning was apparent on the face of a communication, it was classified as libel per se. When extrinsic evidence was introduced to establish the defamatory character of the statement, it was called libel per quod.

Comment, *The Law of Defamation: An Arkansas Primer,* 42 Ark. Law Rev. 915, 923 (1989); *see also Ransopher* v. *Chapman,* 302 Ark. 480, 791 S.W.2d 686 (1990) (citing comment with approval). Arkansas has interchanged terminology when discussing slander *per se,* libel *per se,* defamation *per se,* and words that are actionable *per se.* 42 Ark. Law Rev. at 922-25. The comment states as follows:

> Under Arkansas law, several types of statements are deemed defamatory per se not only in very old cases, but also in some relatively recent decisions. These include charges of criminal activity, adultery, "contagious distemper," or dishonesty, as well as any charge which injures the plaintiff in his or her trade, business, or profession.

42 Ark. Law Rev. at 925 (citations omitted).

■ We have explained the distinction between words that are actionable *per se* and those that are not:

> "Where the natural consequence of the words is a damage, as if they import a charge of having been guilty of a crime, or of having a contagious distemper, or if they are prejudicial to a person in office, or to a person of a profession or trade, they are in themselves actionable; in other cases, the party who brings an action for words, must show the damage which was received from them."

*Reese* v. *Haywood,* 235 Ark. 442, 443, 360 S.W.2d 488, 489 (1962) (quoting *Studdard* v. *Trucks,* 31 Ark. 726, 727 (1877)). In *Reese,* a comparable case, we went on to explain:

Damage is not necessarily a natural consequence of the publication of the bare statement that a farmer owes a past-due account to an implement company, *with no suggestion of a dishonest or fraudulent refusal to pay*. While such a publication might be defamatory in itself in the case of a trader or one in whose business credit is an important asset, the contrary rule prevails where the plaintiff is not a trader. Harper & James, The Law of Torts, § 5.2. *In the same vein we have said that an imputation of insolvency is not actionable per se. Rachels* v. *Deener,* 182 Ark. 931, 33 S.W.2d 39; see also *Honea* v. *King,* 154 Ark. 462, 243 S.W. 74.

*Id.* at 443–44, 360 S.W.2d at 489 (emphasis added).

In *Rachels* v. *Deener,* 182 Ark. 931, 33 S.W.2d 39 (1930), this court considered whether a letter was libelous *per se.* The letter, which referred to the plaintiff attorney, stated in pertinent part, "We have found it necessary to charge off some notes that he owed this bank as they were uncollectible. Would suggest rather conservative dealings with him." *Id.* at 933, 33 S.W.2d at 39. We held, "This is the most damaging statement contained in the letter, and it is not libelous *per se,* as, when analyzed, it amounts only to a statement that his credit at the bank is not so good as it once was." *Id.* The opinion concludes:

The most that can be said is that there is an imputation of insolvency which is not actionable *per se.*

The words used not being libelous *per se,* and there being no allegation of special damages, the complaint failed to state a cause of action, and the demurrer was properly sustained.

*Id.* at 933–34, 33 S.W.2d at 40 (citation omitted).

In *Dun & Bradstreet, Inc.* v. *Robinson,* 233 Ark. 168, 345 S.W.2d 34 (1961), we considered a case in which the defamatory statement was a report that stated the plaintiff reportedly had discontinued his business operations. We recognized the importance of credit to a business, *id.* at 186, but held that the trial court correctly ruled that the publication in issue was not libelous *per se.* We quoted from 53 C.J.S., *Libel and Slander* § 8, at 41 as follows:

"In general, defamatory words may be divided into those that are actionable *per se,* which on their face and without

the aid of extrinsic proof are recognized as injurious, and those that are actionable *per quod*, as to which the injurious character appears only in consequence of extrinsic facts."

*Id.* at 178-79, 345 S.W.2d at 40.

Further, because we affirm the trial court's ruling that the statement did not constitute defamation *per se*, we need not consider whether we could affirm for a different reason. Without deciding the issue, we note that the statement in the pleading may have been absolutely privileged. *See Pogue* v. *Cooper*, 284 Ark. 202, 680 S.W.2d 698 (1984); *see also* Comment, *The Law of Defamation: An Arkansas Primer*, 42 Ark. Law Rev. 915, 997-1000 (1989); Rodney Smolla, *Law of Defamation*, § 8.03 (Release #9, Nov. 1995).

Donald Ewing next argues that the trial court erred in failing to give the following instruction on republication:

> You are instructed that under Arkansas law, one who publishes a defamatory statement is liable for any unauthorized republication, if such republication was foreseeable as a natural and probable consequence of the original publication.

We have never decided whether one is liable for republication of a defamatory statement, *see Luster* v. *Retail Credit Co.*, 575 F.2d 609 (8th Cir. 1978), and we need not decide the issue in this case. Because there was a finding that the original statement did not defame Ewing, the jury could not have concluded that Cargill was liable for a republication of the statement. Since the appellant was not possibly prejudiced by the failure of the trial court to give the instruction, we will not reverse. *Mikel* v. *Hubbard*, 317 Ark. 125, 876 S.W.2d 558 (1994).

Donald Ewing next argues that the trial court erred in granting Cargill's motion for directed verdicts on the issues of loss of credit and injury to reputation. He argues that he was not required to present proof of actual loss because his action was one for defamation *per se*. We have already given the reasons that the statement did not constitute defamation *per se*. In addition, since the jury determined that Ewing was not defamed, he could not have been prejudiced by the trial court granting the motion for directed verdict as to damages for loss of credit and damage to reputation.

Therefore, we will not reverse the trial court on this point. *Mikel* v. *Hubbard*, 317 Ark. 125, 876 S.W.2d 558 (1994).

Affirmed.