Alan MINOR, Individually, and d/b/a Minor Manufacturing, Inc. *v.* J.P. FAILLA, Individually and In His Capacity as Councilman for the City of Gould, Arkansas, and Robert Stephens, Individually and In His Capacity as Councilman for the City of Gould, Arkansas

96-1265 946 S.W.2d 954

Supreme Court of Arkansas
Opinion delivered June 30, 1997

*Kearney Law Offices*, by: *John L. Kearney*, for appellant.

*Ralph C. Ohm*, for appellees.

ROBERT L. BROWN, Justice. Appellant Alan Minor, individually, and d/b/a Minor Manufacturing, Inc. (Minor), appeals a directed verdict in favor of appellees J.P. Failla and Robert Stephens by the circuit court on his claim for defamation. The matter was tried by the court sitting without a jury.

The genesis for the litigation was a complaint for defamation filed by Minor against Failla and Stephens. The complaint alleged that Minor had filed a claim with the City of Gould seeking compensation for water damage and property loss to his necktie manufacturing plant. The matter was referred by City officials to the City's liability carrier, which investigated the claim, and after determining its validity, paid a reasonable sum on Minor's behalf for the losses. Minor alleged that after the claim was paid, Failla and Stephens made statements to third parties that Minor had obtained the insurance payment through "dishonest, fraudulent and/or criminal means." Minor further alleged that the councilmen made the statements to private citizens in Gould and caused the statements to be published in the *Arkansas Democrat-Gazette*. And, finally, he alleged that they caused a criminal complaint to be filed against him with both the Lincoln County Sheriff's Department and the Arkansas State Police. Minor prayed for substantial compensatory and punitive damages. Failla and Stephens answered that any statements made by them were true and that they were protected by a qualified immunity due to their official capacities.

At trial, numerous witnesses testified about rainfall, converging pipelines, the City's problem with sewerage, and whether the

water or sewerage damage was caused by blockage in the pipeline on Minor's property or the City's. Lincoln County Sheriff Loyd Phillips testified that he was contacted by Stephens, who asked him to determine whether a claim had been paid to Minor Manufacturing and, if so, in what amount. He stated that he was also asked to determine whether the claim was legitimate. He testified that he contacted Failla, who wanted him to find out whether the sewer had "backed up" on the City's property or on Minor's property. The Sheriff added that Failla and Stephens believed that the claim, if it was paid, was not legitimate. He testified that he took no action but referred the matter to Lloyd Franklin, an investigator with the Arkansas State Police.

State Police Investigator Lloyd Franklin testified that he received the complaint from Sheriff Phillips regarding the loss at Minor Manufacturing and treated it as a criminal charge. He stated that his goal was to investigate whether the City had authorized an improper insurance claim. He added that he investigated the matter as a theft-of-property violation because if the liability was not the City's, then unlawful deceit could be involved. He testified that at the completion of his investigation, he did not recommend a criminal charge to the prosecuting attorney, and none was filed.

Kay Perry, a senior claims adjuster for the City's liability carrier, testified that she became familiar with the file when Stephens called and asked for a copy. She released a copy of the file to him, who she said was upset because the claim had already been paid to Minor. She testified that Minor initially claimed $5,058 but that total benefits paid on his behalf were $10,369.15.

Joe Farmer also testified. He stated that while he was employed by the *Arkansas Democrat-Gazette*, he covered the Gould City Council because the town was suffering financial difficulties and a turnover in the mayor's office. He stated that Failla told him that there was an investigation occurring on an insurance payment made to Minor. He added that he did not believe that Failla thought Minor was guilty of any wrongdoing and specifically stated that he did not recall either Failla or Stephens indicating that Minor was engaged in wrongdoing.

Danny Snyder was called out of turn by the defense. Snyder testified that he was licensed as a master plumber and that he had found a significant number of tree roots in the line connecting Minor's manufacturing plant to the City's sewer system. He testified that prior to removing the roots, water was backed up to Minor's two buildings. After the roots were removed, the water flowed freely to the sewer system. Snyder testified that he went into both of Minor's buildings and found clear water, as opposed to sewer water, which caused him to believe that the flood problem was possibly caused by an overflowing commode. Snyder's opinion throughout was that Minor's building was flooded by clear water — not sewer water.

Failla and Stephens were then called by Minor as witnesses. Failla testified that he believed the City's insurance carrier would deny coverage once it saw Danny Snyder's report. He further stated that he had asked the City's mayor, A.B. Allen, for a status report on Minor's claim. After the claim was paid, he said he turned the matter over to Sheriff Phillips because he did not know what else to do. He admitted that he was contacted by Joe Farmer with the *Arkansas Democrat-Gazette* on at least two occasions during October 1993. Farmer authored two articles for the newspaper: one dated October 21, 1993, entitled: "Open city books or face inquiry, Gould citizen group warns mayor"; and a second dated October 27, 1993, entitled: "State police investigate whether manufacturer actually got settlement." Failla agreed that his contributions to the October 27 article were accurately reflected by Farmer.

Stephens testified that when he learned of the damage to Minor's business, he understood that there was a possibility that the City was at fault. He stated that he and Failla waited for a report on the final action to be taken on the claim but never received one. He testified that, based largely on Danny Snyder's report, he did not believe the claim should have been paid. He also believed that there was a discrepancy in the amount paid because the payment was higher than that requested by Minor. Stephens testified that he then went to Sheriff Phillips with the insurance file because he believed that both the city council and the mayor should have been involved in the handling of the claim.

He maintained that the insurance company should not have paid the claim. He added that he spoke with reporter Joe Farmer two times. He stated that he gave him a copy of the insurance file so that if Farmer printed anything, he would print the truth. He agreed with the October 27, 1993 newspaper article, which quoted him as saying that he did not believe the accident was the City's fault.

Minor was the final witness to testify. He stated that after filing his claim for damage to his necktie manufacturing business, Mayor Allen and the city council agreed that the proper route to go was to submit a claim to the insurance carrier. Minor testified that he subsequently received two checks from the carrier totalling $3,638. He learned that money for damages to the buildings themselves would be paid directly to another company, Metro Builders & Restoration Specialists. After this payment, he said that he was approached by State Police Investigator Franklin, who told him that he had received information that he was trying to defraud the insurance company based on his receipt of over $10,000 on a claim that was worth approximately $3,000. He also testified that he spoke with reporter Joe Farmer on the same subject. To both men, he gave the same explanation for how payments were distributed. Nevertheless, he complained that Farmer's October 20 article referenced payment of $10,000 to Minor Manufacturing and the fact "city officials" believed the claim to be worth only $3,200. He stated that he confronted Stephens over whether he was the source for the story about the $10,000 check. He testified that Stephens did not deny that he made the statement but said only that he did not agree with the settlement. Minor claimed that because of these articles, his business had closed in February 1994.

At the conclusion of Minor's case, Failla and Stephens moved for a directed verdict on the basis that Minor had failed to prove that any statements made by them constituted slander. The trial court agreed. The court stated that Minor was caught in a "political crossfire" between the mayor and city council and that there were no false statements made by Failla and Stephens and no statements that reflected dishonest conduct on the part of Minor. The court further concluded that there was no showing of malice by

the councilmen and that in any case Failla and Stephens would be entitled to a qualified privilege based on their positions on the city council and the City's sewer committee. Judgment in favor of Failla and Stephens was entered accordingly.

■ The sole issue on appeal is whether the trial court erred in granting the councilmen's motion for directed verdict. In reviewing an order granting a motion for directed verdict, this court considers the evidence in the light most favorable to the party against whom the verdict was directed. *Lakeview Country Club, Inc. v. Superior Prods.*, 325 Ark. 218, 926 S.W.2d 428 (1996); *Higgins v. General Motors Corp.*, 287 Ark. 390, 699 S.W.2d 741 (1985). If any substantial evidence exists that tends to establish an issue in favor of that party, it is error for the trial court to grant the directed-verdict motion. *Lakeview Country Club, Inc. v. Superior Prods., supra.*

■ ■ Minor urges that the trial court erred in directing a verdict relating to the statements Failla and Stephens made to Sheriff Phillips because the statements constituted defamation *per se* in that they implicated Minor in criminal activity. A party must prove the following elements to establish a claim for defamation: (1) the defamatory nature of the statement of fact; (2) that statement's identification of or reference to the plaintiff; (3) publication of the statement by the defendant; (4) the defendant's fault in the publication; (5) the statement's falsity; and (6) damages. *Mitchell v. Globe Int'l Pub., Inc.*, 773 F. Supp. 1235 (W.D. Ark. 1991). The case at bar involves asserted damages resulting from spoken words against non-media defendants and is appropriately termed one for slander. *See Braman v. Walthall*, 215 Ark. 582, 225 S.W.2d 342 (1949). *See also Parkman v. Hastings*, 259 Ark. 59, 531 S.W.2d 481 (1976).

■ ■ We have explained the test for establishing defamation *per se* as follows:

Where the natural consequence of the words is a damage, as if they import a charge of having been guilty of a crime, or of having a contagious distemper, or if they are prejudicial to a person in office, or to a person of a profession or trade, they are in them-

selves actionable; in other cases, the party who brings an action for words, must show the damage which was received from them.

*Ewing v. Cargill, Inc.*, 324 Ark. 217, 219, 919 S.W.2d 507, 508 (1996), *quoting Reese v. Haywood*, 235 Ark. 442, 443, 360 S.W.2d 488, 489 (1962); *Studdard v. Trucks*, 31 Ark. 726, 727 (1877). The benefit to a plaintiff in establishing defamation *per se* is that no evidence of damages in the form of actual losses is required. *Waymire v. DeHaven*, 313 Ark. 687, 858 S.W.2d 69 (1993); *Ransopher v. Chapman*, 302 Ark. 480, 791 S.W.2d 686 (1990).

Although Minor never points to any specific slanderous statements made by Failla and Stephens to Sheriff Phillips, it is apparent that his argument focuses on what the two men asked Sheriff Phillips to do. Minor asserts that Failla and Stephens effectively filed a criminal complaint based on facts known by them to be false. Failla and Stephens deny this and maintain that they just wanted to know whether the insurance claim was legitimate.

In this case, the words of Failla and Stephens were actionable if, taken together with the attendant circumstances, they implicated Minor in the commission of a crime. This is a question of fact for the jury. *Bland v. Verser*, 299 Ark. 490, 774 S.W.2d 124 (1989); *Dean v. Black & White Stores, Inc.*, 186 Ark. 667, 55 S.W.2d 500 (1932). Given the attendant circumstances, and viewing the evidence in the light most favorable to Minor, we conclude that there was substantial evidence that Failla and Stephens had accused Minor of committing a crime. Although they argue that they merely sought an investigation to determine whether the claim should have been paid, the critical fact is that they solicited the aid of law enforcement to determine the claim's legitimacy.

Nevertheless, the trial court determined that even if Failla's and Stephens's statements to Sheriff Phillips were slanderous, they were protected by a privilege. We agree. Determination of the existence of a privilege is a matter of law. *See, e.g., Pogue v. Cooper*, 284 Ark. 202, 680 S.W.2d 698 (1984). This court has stated that a publication may be conditionally privileged if the circumstances induce a correct or reasonable belief that (1) there is information that affects a sufficiently important interest of

the recipient or a third person; and (2) the recipient is one to whom the publisher is under a legal duty to publish the defamatory matter or is a person to whom its publication is otherwise within the generally accepted standards of decent conduct. *Dillard Dep't Stores, Inc. v. Felton*, 276 Ark. 304, 307, 634 S.W.2d 135, 136-37 (1982), *citing* RESTATEMENT (SECOND) OF TORTS § 595 (1981). This court has further clarified the conditions under which the qualified privilege may be invoked:

> A communication is held to be qualifiedly privileged when it is made in good faith upon any subject-matter in which the person making the communication has an interest or in reference to which he has a duty, and to a person having a corresponding interest or duty, although it contains matters which, without such privilege, would be actionable.

*Navorro-Monzo v. Hughes*, 297 Ark. 444, 451, 763 S.W.2d 635, 638 (1989), *quoting Bohlinger v. Germania Life Ins. Co.*, 100 Ark. 477, 482-83, 140 S.W. 257, 259 (1911).

 We have further held that the qualified privilege must be exercised in a reasonable manner and for a proper purpose and that the immunity does not extend to irrelevant defamatory statements that have no relation to the interest entitled to protection. *Navorro-Monzo v. Hughes, supra.* The qualified privilege is also lost if it is abused by excessive publication; if the statement is made with malice; and if the statement is made with a lack of grounds for belief in the truth of the statement. *Navorro-Monzo v. Hughes, supra; Ikani v. Bennett*, 284 Ark. 409, 682 S.W.2d 747 (1985). The question of whether a particular statement falls outside the scope of the qualified privilege for one of these reasons is a question of fact for the jury. *See Braman v. Walthall, supra.*

The case of *Baker v. Mann*, 276 Ark. 278, 634 S.W.2d 125 (1982), provides guidance on this point. In *Baker,* the mayor of Shannon Hills and five members of the city council signed a letter issued to the prosecuting attorney which contained allegations of missing public records, missing weapons that had been confiscated, lack of records showing the disposition of drugs and drug paraphernalia, and missing equipment, all of which implicated the

police department. The former police chief and three former part-time police officers filed suit and alleged that they had not been guilty of any wrongdoing but that the letter accused them of criminal activity. The trial court directed a verdict on the ground that the letter was protected by a qualified privilege.

On appeal, this court agreed with the determination of the trial court:

> In the present case the mayor and aldermen were discharging a public duty in asking the prosecuting attorney to initiate an investigation of former public employees' possible mishandling of public records, public property, and public funds.

*Baker v. Mann*, 276 Ark. at 281, 634 S.W.2d at 126. This court noted that there was an absence of proof on the issues of whether the letter was published with malice or with any knowledge that its contents were untrue.

In the instant case, Failla and Stephens both occupied positions on the City's council and sewer committee and spoke to another public official, Sheriff Phillips, about potential criminal activity in connection with their positions. We view this as nothing more than fulfillment of their official duties. Thus, we hold that the qualified privilege attached.

There are two additional points. There was some evidence presented of a perceived controversy between Failla and Minor with respect to Minor's decision as president of the Gould School Board to deny Failla's niece a transfer to another school district. We conclude this matter was not sufficiently developed and fails to rise to the level of substantial evidence of malice on Failla's part. Nor do we agree that substantial evidence was presented that Failla and Stephens falsely accused Minor of a crime. In sum, the trial court correctly directed a verdict in favor of the councilmen.

Minor in his complaint also complained of Failla's and Stephens's intentional publication of slander through the *Arkansas Democrat-Gazette* newspaper. In his brief on appeal, however, Minor makes only passing reference to the fact that Failla and Stephens made slanderous comments to a news journalist, presumably

Joe Farmer, but he does not develop this point in his argument. Rather, the thrust of his brief concerns the referral of the criminal matter to Sheriff Phillips and Minor's contention that there was no qualified immunity. We will not speculate on which statements made to Farmer and published in the newspaper Minor claims to be slanderous. It is incumbent on the appellant to develop an issue for purposes of appeal. *See, e.g., Morrison v. Jennings*, 328 Ark. 278, 943 S.W.2d 559 (1997); *Milam v. Bank of Cabot*, 327 Ark. 256, 937 S.W.2d 653 (1997); *Granquist v. Randolph*, 326 Ark. 809, 934 S.W.2d 224 (1996).

Affirmed.