Jarrell E. SOUTHALL and Barbara J. Southall *v.* LITTLE
ROCK NEWSPAPERS, INC., and
Bobbi Ridlehoover

97-400 964 S.W.2d 187

Supreme Court of Arkansas
Opinion delivered March 5, 1998
[Petition for rehearing denied April 16, 1998.*]

---

* Brown and Imber, JJ., not participating.

126

*R. David Lewis*, for appellants.

*Williams & Anderson*, by: *Leon Holmes*, for appellee Little Rock Newspapers, Inc.

*Kaplan, Brewer & Maxey, P.A.*, by: *Philip E. Kaplan*, for appellee Bobbi Ridlehoover.

DONALD L. CORBIN, Justice. Appellants Jarrell E. and Barbara J. Southall filed an action for defamation against Appellees Little Rock Newspapers, Inc. (the Newspaper), and Bobbi Ridlehoover[1] in the Pulaski County Circuit Court. The trial court granted summary judgment to both Appellees. Appellants raise three points for reversal, which necessarily involve questions on the law of torts. As such, our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(a)(15). We find no error and affirm.

*Facts*

Appellant Jarrell Southall was the executive director of the Arkansas Department of Pollution Control and Ecology (PC&E) from 1977 through January 28, 1983, though he had actually worked for PC&E as a chemist beginning in 1965. In 1983, Southall opened his own consulting service, during which time Ensco, Inc., was one of his main clients. In 1986, Southall went to work directly for Ensco until 1993. According to his deposition, Southall took the lead in trying to draft this state's hazardous-waste legislation and in getting the issue into the public debate. He indicated that there was a lot of controversy surrounding the subject of hazardous waste. He stated that it was part of his responsibility as both a member and executive director of PC&E to attend legislative committee meetings and give testimony on these issues. He stated further that he had conducted interviews with the media, had talked to reporters on radio and television, had served as a registered lobbyist with the Arkansas General Assembly, and had been fairly prominent in the debate over the regulation of hazardous waste.

On December 16, 1990, the Newspaper ran several articles about Ensco, one of which Appellants argue defamed Jarrell Southall. The article, written by Appellee Ridlehoover, consisted of eighty-four paragraphs and was entitled "The watchers now watched in El Dorado." The relevant portions are as follows:

---

[1] Appellants' complaint also named Walter E. Hussman Jr. as a defendant; however, the notices of appeal filed in this case indicate that Appellants do not appeal the grant of summary judgment in favor of Hussman.

[Jack] Forrest and other Ensco employees were able to name seven former state and federal regulators who now work for the company. Another former PC&E employee was at one time under contract with the company.

The list includes former PC&E director Jarrell E. Southall, who went to work for the company as a consultant in 1983. At the time, Southall said he approached Ensco for the job.

Southall has denied that he negotiated with Ensco for the job while he was the state's top pollution control regulator.

Southall has since become a full-time Ensco employee. He is the contract administrator for the company's proposal to build a hazardous waste incinerator facility in Arizona.

The *Arkansas Democrat* reported in 1983 that Southall had official dealings with Ensco less than a month before he went to work for the company.

In addition, Melvyn Bell, Ensco's former president and now board chairman, provided Southall a private plane ride to Ensco on January 13, 1983 when hazardous material spilled at the plant. State Health Department officials trying to investigate the spill were not allowed past a locked gate.

Southall acknowledged that he flew down with Bell on his plane, and he blamed a "mix-up" in communication for Health Department officials Don Wise and Martin Tull not being admitted inside the gate.

The Health Department shares responsibility with PC&E for investigating such spills, but the PC&E official who should have notified the Health Department failed to do so.

The second article which Appellants argue is defamatory to Jarrell Southall was published in the Newspaper on July 13, 1992, and was entitled "Environmentalists see liquid-waste regulations as best bet." The story consisted of twenty-eight paragraphs and described the work of Clyde Temple of Warren, Arkansas, in the area of environmental issues. The relevant portions of the article are as follows:

Temple, 62, has worked on environmental issues for more than a decade. He is past president and vice president of the Arkansas Wildlife Federation and has been chairman of the group's water committee for 11 years.

He won one of his earliest battles — which Arkansas environmentalists know is no small feat.

It was over water quality. The group he formed, the Committee for a Clean Saline, won a successful citizens' suit in federal court in July 1981 against Jarrell Southall, then director of the state Department of Pollution Control and Ecology, and the City of Warren. The suit forced the cleanup of pollution in the lower Saline River.

On appeal, Appellants argue that the trial court erred in granting Appellees' motion for summary judgment and in making the following findings: (1) that Jarrell Southall was a public official as well as a limited-purpose public figure with regard to environmental issues; (2) that the December 16, 1990 article contained no false or defamatory statement of fact of and concerning Jarrell Southall, and that there was not sufficient evidence showing that Appellees had acted with actual malice; and (3) that, as to the July 13, 1992 article, there was not sufficient evidence that Appellees had acted with actual malice.

We note that Appellants have failed to abstract the articles in their entirety, as is required for this court's review of whether the articles are libelous. *See Little Rock Newspapers, Inc. v. Fitzhugh*, 330 Ark. 561, 954 S.W.2d 914 (1997); *Pigg v. Ashley County Newspaper, Inc.*, 253 Ark. 756, 489 S.W.2d 17 (1973). Appellees have, however, supplied us with sufficient portions of those articles in their supplemental abstract. As such, we will address the merits of the arguments on appeal.

### Public Figure/Public Official

For their first point on appeal, Appellants argue that Jarrell Southall was neither a public official nor a public figure at the time of the articles' publication. We disagree.

Whether a person is a public official or a public figure is a mixed question of fact and law to be determined by the trial court. *Fitzhugh*, 330 Ark. 561, 954 S.W.2d 914 (citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974) and *Cornett v. Prather*, 293 Ark. 108, 737 S.W.2d 159 (1987)). We recently discussed the issue of when an individual is considered to be a public figure:

In *Gertz*, the Supreme Court held that public figures normally enjoy greater access to effective channels of communication and,

thus, have more realistic opportunities to counteract false statements than do private individuals. The Court described public figures as those persons who:

> have assumed roles of especial prominence in the affairs of society. Some occupy positions of such persuasive power and influence that they are deemed public figures for all purposes. More commonly, those classed as public figures have thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved. In either event, they invite attention and comment.

*Id.* at 345. A private individual, on the other hand, has not accepted public office nor assumed an "influential role in ordering society." *Id.* (citing *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 164 (1967) (Warren, C. J., concurring in result)). A private individual has not relinquished his interest in the protection of his own good name, and consequently has a more compelling case for redress of injury inflicted by defamatory falsehood. *Id.* Holding that the designation of a public figure may rest on either of two alternative bases, the Court stated:

> In some instances an individual may achieve such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts. *More commonly, an individual voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues.* In either case such persons assume special prominence in the resolution of public questions.
>
> . . . Absent clear evidence of general fame or notoriety in the community, and pervasive involvement in the affairs of society, an individual should not be deemed a public personality for all aspects of his life. *It is preferable to reduce the public-figure question to a more meaningful context by looking to the nature and extent of an individual's participation in the particular controversy giving rise to the defamation.*

*Fitzhugh*, 330 Ark. 561, 579-80, 954 S.W.2d 914, 924 (emphasis added) (quoting *Gertz*, 418 U.S. at 351-52). Since the Court's decision in *Gertz*, courts have construed the term "public figure" narrowly, with an emphasis on the plaintiff's status in relation to the subject of the defamatory article. *Id.*

This court has held that neither a former United States Attorney nor a private attorney were public figures, (*see Fitzhugh*, 330 Ark. 561, 954 S.W.2d 914; *Dodrill v. Arkansas Democrat Co.*, 265 Ark. 628, 590 S.W.2d 840 (1979), *cert. denied*, 444 U.S. 1076 (1980)). This court has, however, held that an assistant law school dean was a public figure (*see Gallman v. Carnes*, 254 Ark. 987, 497 S.W.2d 47 (1973)), as were a sheriff, a deputy sheriff, a city police officer, (*see Pritchard v. Times Southwest Broadcasting, Inc.*, 277 Ark. 458, 642 S.W.2d 877 (1982); *Hollowell v. Arkansas Democrat Newspaper*, 293 Ark. 329, 737 S.W.2d 646 (1987); *Lancaster v. Daily Banner-News Publishing Co., Inc.*, 274 Ark. 145, 622 S.W.2d 671 (1981)), and a chairman of the board of governors of a county memorial hospital (*see Drew v. KATV Television, Inc.*, 293 Ark. 555, 739 S.W.2d 680 (1987)).

In *Fitzhugh*, 330 Ark. 561, 954 S.W.2d 914, the plaintiff's photograph appeared in an article about the Whitewater investigation in which it was reported that another man named Fitzhugh was indicted by a federal grand jury. We determined that the plaintiff, a former United States Attorney for eight years, was neither a public official nor a public figure, because the substance of the defamatory article bore no relation to his position as a federal prosecutor. We held that, as to the category of limited-purpose public figure, there was no evidence that Fitzhugh had "thrust himself into the vortex of the Whitewater controversy, or that he had engaged the public's attention in an attempt to influence the outcome of the controversy." *Id.* at 582, 954 S.W.2d at 926. We held further that Fitzhugh had not, "by virtue of his having been a federal prosecutor for eight years, occup[ied] a position of persuasive power and influence or one of especial prominence in the affairs of society, such that he could be labeled an all-purpose public figure." *Id.* at 582-83, 954 S.W.2d at 926. We concluded that Fitzhugh had not achieved such general fame or notoriety throughout the area where the article was published that would render him a public personality for all purposes.

■ Here, in contrast to the factual situation presented in *Fitzhugh*, we conclude that, in the present context, Jarrell Southall was a limited-purpose public figure on the subject of environmental issues. The evidence demonstrated that he enjoyed a promi-

nent role in the creation and enforcement of environmental legislation in this state. Southall himself stated in his deposition that he had conducted interviews with the media, had talked to radio and television reporters, had been a lobbyist at the state legislature, and had been fairly prominent in the public debate over the regulation of hazardous waste. By his own statements, Southall has demonstrated that he had thrust himself into the vortex of the public controversy surrounding the subject of hazardous waste. Accordingly, we conclude the trial court's assessment of Southall as a public figure for the limited purpose of environmental issues was not erroneous. It is thus not necessary that we reach the issue of whether Southall is considered to be a public official for the purpose of construing the two articles in question.

## Actual Malice

For their remaining two points for reversal, Appellants argue that the trial court erred in finding that the December 16, 1990 article was not defamatory and that there was not sufficient evidence that Appellees had published either article with actual malice. Appellees do not concede that the articles contained false information or that they were defamatory toward Jarrell Southall. Appellees do contend, however, that even if the articles were factually incorrect and were defamatory, Appellants' claims must nonetheless fail because there was no evidence presented below showing that Appellees published the articles with actual malice.

An action for defamation turns on whether the communication or publication tends or is reasonably calculated to cause harm to another's reputation. *Fitzhugh*, 330 Ark. 561, 954 S.W.2d 914; *Thomson Newspaper Publishing, Inc. v. Coody*, 320 Ark. 455, 896 S.W.2d 897, *cert. denied*, 116 S. Ct. 563 (1995). In order to establish a claim of defamation, a party must prove the following elements: (1) the defamatory nature of the statement of fact; (2) that statement's identification of or reference to the plaintiff; (3) publication of the statement by the defendant; (4) the defendant's fault in the publication; (5) the statement's falsity; and (6) damages. *Fitzhugh*, 330 Ark. 561, 954 S.W.2d 914; *Minor v. Failla*, 329 Ark. 274, 946 S.W.2d 954 (1997). Because Jarrell Southall was a limited-purpose public figure on environmental

issues, Appellants have the additional burden of proving that such false statements were made by Appellees with actual malice. *Coody*, 320 Ark. 455, 896 S.W.2d 897.

In discussing the standard for actual malice, this court has observed:

> [T]he plaintiff in such an action must prove that the defamatory publication "was made with 'actual malice' — that is, with knowledge that it was false or with reckless disregard of whether it was false or not."
>
> . . . .
>
> *These cases are clear that reckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication.* Publishing with such doubts shows reckless disregard for truth or falsity and demonstrates actual malice.
>
> . . . .
>
> The defendant in a defamation action brought by a public official cannot, however, automatically insure a favorable verdict by testifying that he published with a belief that the statements were true. The finder of fact must determine whether the publication was indeed made in good faith.

*Fuller v. Russell*, 311 Ark. 108, 112, 842 S.W.2d 12, 14-15 (1992) (footnote omitted) (emphasis added) (quoting *St. Amant v. Thompson*, 390 U.S. 727, 728, 731, 732 (1968)).

Where a motion for summary judgment is made in a defamation case involving the "actual malice" standard, the trial court must determine whether the evidence presented could support a reasonable jury's finding that actual malice was shown by clear and convincing evidence. *KATV Television, Inc.*, 293 Ark. 555, 739 S.W.2d 680 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)). Where the First Amendment is involved, we are "obligated to make an independent examination of the whole record to make sure the judgment does not constitute a forbidden intrusion on the field of free expression." *Fuller*, 311 Ark. at 112, 842 S.W.2d at 14 (citing *Bose Corp. v. Consumer's Union of United States, Inc.*, 466 U.S. 485 (1984)). The question of whether the evidence in the record is sufficient to support a finding of actual

malice is a question of law. *Id.* (citing *Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657 (1989)). Accordingly, because Appellees' First Amendment right to free expression is at stake in this case, we apply the heightened standard of review. This heightened standard only applies to a review of the issue of actual malice, not to the determination of libel. *Coody*, 320 Ark. 455, 896 S.W.2d 897 (citing *Bose*, 466 U.S. 485).

We consider first the December 16, 1990 article reporting Jarrell Southall's connection with Ensco and his having received a plane ride to Ensco's El Dorado location from the company's president. Appellants do not contend that the story was factually false; rather, they assert that the implication from the story was defamatory. The portion of the article that Appellants find defamatory is as follows:

> The *Arkansas Democrat* reported in 1983 that Southall had official dealings with Ensco less than a month before he went to work for the company.
>
> In addition, Melvyn Bell, Ensco's former president and now board chairman, provided Southall a private plane ride to Ensco on January 13, 1983 when hazardous material spilled at the plant. State Health Department officials trying to investigate the spill were not allowed past a locked gate.

Specifically, Appellants assert that the article is defamatory in that it implied that Southall, who was then director of PC&E, was at Ensco's plant when health department officials trying to investigate the spill were not allowed past the locked gate, and that he had something to do with those officials being denied entrance to the plant.

██ Considering that Southall admitted the truth of the statements contained in the article, namely that he had accepted a plane ride from Melvyn Bell and that the health department officials were not allowed past the gate because of a "mix-up" in communication, we fail to see how such true statements amount to defamatory statements of fact concerning Southall. Nor do we view the article as having a defamatory implication. Instead, we agree with the trial court that the article implies nothing more than that Southall went to the plant on a private plane when the spill occurred and that the health department officials attempting

to investigate the spill were not allowed past the locked gate; it does not imply that Southall was standing at the gate preventing the officials from entering or that he had conspired with Ensco to keep them out of the plant.

Furthermore, even assuming that those statements possessed a defamatory implication, Appellants have offered no clear and convincing evidence that Appellees published the article with actual malice. Appellants merely contend that Ridlehoover knew the implication of the article was false because she had reported in 1983 that Southall had said that he was no longer at the Ensco plant at the time that the health department officials had arrived. Appellants argue that the reason Ridlehoover only made this implication, rather than stating outright that Southall was at the plant at the time the officials were prohibited entrance, was to avoid a libel suit, which demonstrates actual malice. We are not persuaded by this argument. The fact that the statements were true and Southall was given the opportunity to state his view of the events that occurred at the Ensco plant refute the allegation that Appellees published the article with actual malice.

Appellants further argue that the words "in addition" contained in the December 16, 1990 article referred to more than one "official dealing" that Southall had with Ensco prior to his departure from PC&E. Appellants offer no convincing argument as to how the fact that Southall may or may not have had more than one "official dealing" with Ensco prior to his departure from PC&E is necessarily defamatory to him. Appellees contend, on the other hand, that even if there were some defamatory implication from those words, there was no evidence presented by Appellants that would show by clear and convincing evidence that they published the article with actual malice. In support of this contention, Appellees point to an article published in the Newspaper in 1983 reporting that Southall had some communication with Ensco president Melvyn Bell, either directly or indirectly through PC&E staff. The article, published on April 19, 1983, reflected:

> Records on file at the department show ENSCO has had extensive dealings with the agency almost up to the time when Southall stepped down in January, and some of these dealings involve Southall personally.

For example, in December ENSCO sought permission to run a test burn of the hazardous waste in a mobile incinerator at the company's El Dorado plant. The company had no permit, however, and the request was denied.

Sandra Perry, hazardous waste coordinator at the Pollution Control and Ecology Department, sent a memo on the ENSCO request to Southall and two other officials. Dated Dec. 13, the memo concludes:

"Mr. Bell can, however, burn natural gas or fuel oil . . . in his new incinerator without a permit for a period of four hours in December. If his goal is to secure the tax break for pollution control equipment that expires in December, perhaps this would meet his needs."

Beside this paragraph a handwritten note appears, which states: "Melvin (sic) said this was fine & would suit him OK. I told him to notify JES (Southall) before he began as per JES's (request.)" The note wasn't signed, but apparently was written by Ms. Perry.

A spokesman for the Pollution Control and Ecology Department said the agency wasn't giving free tax advice to Ensco and never sent this memo to the company. "It was strictly an internal document," the spokesman said.

When asked about the memo in a recent interview, Southall said he couldn't recall the circumstances.

 Appellants respond that this memo does not qualify as an "official dealing" between Southall and Ensco, and that the article is thus false and defamatory. Such contention does not advance Appellants' position on appeal, because the fact that Appellees relied on this prior article in support of the December 16, 1990 article contravenes the argument that the article was published with actual malice. In short, there is no evidence that would permit the conclusion that Appellees in fact entertained serious doubts as to the truth of the December 16, 1990 article or that they published the article with a reckless disregard for the truth.

As to the July 13, 1992 article, Appellants assert that the statement that Clyde Temple won a suit against Jarrell Southall, then director of PC&E, was false and defamatory. Appellants assert that Southall had been dismissed as a party to the suit prior to the time that it was settled by the City of Warren. Appellants

argue that actual malice is apparent from Ridlehoover's failure to read the official court file prior to publishing the article in order to verify whether Southall was a party at the time of the suit's disposition.

Appellees argue that even if the statement that Clyde Temple won a suit against Southall and the City of Warren is not substantially true, there is nothing defamatory about a statement that the director of a state agency was sued in his capacity as director of that agency. They argue further that Appellants' argument regarding malice amounts to no more than an allegation of a failure to investigate, which does not meet the definition of actual malice. We agree with this argument.

██ ██ The foregoing case law demonstrates that the failure to investigate information later published is not, without more, evidence of actual malice. There must be clear and convincing evidence to permit the conclusion that Ridlehoover and the Newspaper in fact entertained serious doubts as to the truth of the story. There was no such evidence presented below. In fact, Ridlehoover stated that her source for the information was the Newspaper's "clip file." Appellants do not rebut this assertion with any proof to the contrary.[2] As such, the evidence does not rise to the level of demonstrating that Ridlehoover entertained serious doubts about the truth of the statements when she published the July 13, 1992 article. Accordingly, we affirm the ruling of the trial court.

HOLLY LODGE MEYER, Sp. J., joins in this opinion.

THORNTON, J., and KEITH N. WOOD, Sp. J., concur.

BROWN and IMBER, JJ., not participating.

RAY THORNTON, Justice, concurring. I concur in the deci sion to affirm, but, in my opinion, it is only necessary to decide

---

[2] We note Appellants' argument that malice is shown by the fact that, when asked about the existence of this "clip file," the Newspaper responded that there was no such file. We do not address this argument, however, as such alleged response on behalf of the Newspaper is not contained in the abstract, nor is it apparent that Appellants ever raised this issue below prior to the time the trial court made its ruling. The abstract reflects that this argument was first raised in Appellants' motion for new trial.

whether the trial court erred in determining that Jarrell Southall was a limited-purpose public figure who failed to show that appellees published the allegedly inaccurate news stories about him with actual malice. Southall's charges, if proven, would not reach the threshold of actual malice required by the landmark case of *New York Times v. Sullivan*, 376 U.S. 254 (1964). I agree with the majority that the trial court did not err in granting summary judgment and that the case should be affirmed.

Special Justice KEITH N. WOOD joins in this concurrence.